Brian Hennessy (SBN 226721)
E-mail: BHennessy@perkinscoie.com
Perkins Coie LLP
3150 Porter Drive
Palo Alto, California  94304
Telephone:  (650) 838-4300
Facsimile:  (650) 838-4350

Attorneys for Plaintiff
craigslist, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation,<br><br>v.<br><br>ALECKSEY KERBEL, a Minnesota resident, JOHN DOE d/b/a www.craigslist-poster.com, DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. CV-11-3309 EMC<br><br>**CRAIGSLIST, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ALECKSEY KERBEL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:      May 18, 2012<br>TIME:      1:30 p.m.<br>DEPT:      Courtroom 5 - 17th Floor<br>Judge:     The Hon. Edward M. Chen |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................ 2

II. PROCEDURAL HISTORY ............................................................................. 2

III. FACTUAL BACKGROUND ............................................................................ 4

    A. CRAIGSLIST'S COPYRIGHT PROTECTED WEBSITE AND TOU ................ 4

    B. CRAIGSLIST SECURITY MEASURES .................................................. 5

    C. KERBEL'S ABUSE, INFRINGEMENT, AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS .................................... 5

        1. Kerbel's Auto-Posting Products and Services ............................................. 5

        2. Kerbel's Devices for Circumventing craigslist's Security Measures ......... 6

        3. Kerbel's Use of the "CRAIGSLIST" Mark ............................................. 7

    D. KERBEL IS UNJUSTLY ENRICHED BY HIS ABUSE, INFRINGEMENT AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS ..................................................................... 7

    E. CRAIGSLIST IS SUFFERING MONETARY AND INTANGIBLE INJURIES FROM KERBEL'S ACTIONS ............................................. 7

IV. DISCUSSION .................................................................................................. 8

    A. CRAIGSLIST IS ENTITLED TO DEFAULT JUDGMENT ............................... 8

        1. Prejudice to craigslist ............................................................... 9

        2. Merits of the Substantive Claims and Sufficiency of the Complaint .......... 9

            a. Digital Millennium Copyright Act Violation, 17 U.S.C. § 1201 ..................................................................... 9

            b. Computer Fraud and Abuse Act Violation, 18 U.S.C. § 1030 ..................................................................... 10

            c. Cal. Pen. Code § 502 ..................................................................... 11

            d. Trademark Infringement, 15 U.S.C. §§ 1114, 1125(a), 1125(c) and 1125(d) ..................................................................... 12

            e. California Common Law Trademark Infringement ..................... 12

            f. Breach of Contract and Inducing Breach of Contract ................. 13

**TABLE OF CONTENTS**
(continued)

Page

       g.     Intentional Interference With Contractual Relations ................... 13

       h.     Fraud .......................................................................................... 14

   3.     Sum of Money at Stake ........................................................................... 15

   4.     The Possibility of Disputed Material Facts and Whether Default was Due To Excusable Neglect................................................................. 16

   5.     Policy Favoring Decisions on the Merits .................................................. 16

 B.    CRAIGSLIST IS ENTITLED TO APPROPRIATE RELIEF ............................. 16

   1.     Injunctive Relief Is Appropriate and Necessary ....................................... 17

   2.     Statutory Damages Under the DMCA Are Also Appropriate and Necessary ................................................................................................. 18

   3.     Profits For Trademark Infringement Are Also Appropriate and Necessary ................................................................................................. 20

V.    CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*3A Entm't Ltd. v. Constant Entm't, Inc.*,
   Case No. 08-01274 JW, 2009 WL 248261 (N.D. Cal. Jan. 30, 2009) ................................... 16

*Antoine v. Atlas Turner, Inc.*,
   66 F.3d 105 (6th Cir. 1995) ................................................................................................... 8

*Arista Records, Inc. v. Beker Ent., Inc.*,
   298 F. Supp. 2d 1310 (S.D. Fla. 2003) ...................................................................... 8, 15, 17

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
   222 Cal. App. 3d 1371 (Cal. App. 1990) .............................................................................. 13

*craigslist, Inc. v. Mesiab*,
   Case No. CV 08-05064 CW, Docket Item No. 84 (N.D. Cal. Nov. 15, 2010) .................. 9, 19

*craigslist, Inc. v. Naturemarket, Inc. et al.*,
   Case No. CV 08-05065 PJH, Docket Item No. 54 (N.D. Cal. Jan. 28, 2010) ................. 10, 19

*craigslist, Inc. v. Realworks Group, LLC*,
   Case No. CV 08-05072 JW, Docket Item No. 44 (N.D. Cal. Oct. 29, 2009) ....................... 19

*craigslist, Inc. v. Troopal*, *Inc. et al.*,
   Case No. 09-04741 JW, Docket Item No. 66 (N.D. Cal. July 12, 2011) ....................... 10, 19

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ............................................................................. 8, 9, 15, 16

*Elektra Entm't. Group v. Avery*,
   2007 WL 2023545 (E.D. Cal. July 11, 2007) ........................................................................ 9

*Facebook, Inc. v. Power Ventures, Inc.*,
   2010 WL 3291750 (N.D. Cal. July 20, 2010) ...................................................................... 11

*Fair Hous. of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) ........................................................................................... 8, 15

*Fallaci v. New Gazette Literacy Corp.*,
   568 F. Supp. 1172 (S.D.N.Y. 1983) .................................................................................... 15

*Google Inc. v. American Blind & Wallpaper*,
   2007 WL 1159950 (N.D. Cal. April 18, 2008) .................................................................... 12

*Jackson v. Sturkie*,
   255 F. Supp. 2d 1096 (N.D. Cal. 2003) .............................................................................. 17

*Microsoft Corp. v. McGee*,
  490 F. Supp. 2d 874 (S.D. Ohio 2007) ............................................................ 8, 15

*Molnar v. 1-800-Flowers.com, Inc.*,
  2008 WL 4772125 (C.D. Cal. Sept. 29, 2008) ...................................................... 13

*Online Policy Group v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) .............................................................. 13

*Peer Int'l Corp. v. Pausa Records, Inc.*,
  909 F.2d 1332 (9th Cir. 1990) ........................................................................ 18

*PepsiCo v. Cal. Sec. Cans.*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................................. 9, 16

*PepsiCo v. Triunfo-Mex, Inc.*,
  189 F.R.D. 431 (C.D. Cal. 1999) ...................................................................... 8

*Philip Morris USA Inc. v. Castworld Prods., Inc.*,
  219 F.R.D. 494 (C.D. Cal. 2003) .......................................................... 9, 15, 16, 17

*Playboy Enter., Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020, 1025 (9th Cir. 2004) ................................................................. 12

*Ringcentral, Inc. v. Quimby*,
  711 F. Supp. 2d 1048 (N.D. Cal. 2010) .............................................................. 12

*Shamblin v. Berge*,
  166 Cal. App. 3d 118 (Cal. Ct. App. 1985) ........................................................ 13

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*,
  457 F. Supp. 2d 957 (N.D. Cal. 2006) .............................................................. 8, 15

*Ticketmaster L.L.C. v. RMG Techs.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) .......................................................... 10, 13

*Universal City Studios, Inc. v. Reimerdes*,
  111 F. Supp. 2d 294 (S.D.N.Y. 2000) ................................................................ 17

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................... 14

*Wood v. Apodaca*,
  375 F. Supp. 2d 942 (N.D. Cal. 2005) ................................................................ 12

**STATUTES**

15 U.S.C. §§ 1114, 1125(a), 1125(c) and 1125(d) ................................................ 2, 12, 17

15 U.S.C. § 1117(a) ....................................................................................... 20

-iv-

17 U.S.C. § 502(a) ............................................................................................................ 17

17 U.S.C. § 1201 ........................................................................................................... 2, 9

17 U.S.C. § 1201(a)(1)(A) ................................................................................................. 9

17 U.S.C. § 1201(a)(2) ..................................................................................................... 10

17 U.S.C. § 1203(b)(1) ..................................................................................................... 17

17 U.S.C. § 1203(c)(3)(A) ................................................................................................ 18

California Business & Professions Code § 17200 ............................................................ 2

California Penal Code § 502 ................................................................................... 2, 11, 12

CCP Section 415.20 ....................................................................................................... 3, 4

CCP Section 415.20(b) ...................................................................................................... 3

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 .................................................... 2, 10

Digital Millennium Copyright Act, 17 U.S.C. § 1203(c)(3) ........................................... 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 55 .............................................................................................................. 4

Fed. R. Civ. P. 55(a) .................................................................................................... 8, 16

Fed. R. Civ. P. 4(e)(1) .................................................................................................... 3, 4

Fed. R. Civ. P. 4(e)(2)(B) and (2) ..................................................................................... 3

NOTICE OF MOTION AND MEMORANDUM OF
P&A'S ISO OF MOTION FOR DEFAULT
JUDGMENT, CV-11-3309 EMC

1   TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE THAT on May 18, 2012 at 1:30 p.m., or as soon thereafter as

3   the matter may be heard in Courtroom 5, 17th Floor of the United States District Courthouse, 450

4   Golden Gate Ave., San Francisco, California, 94102, before the Honorable Edward M. Chen,

5   plaintiff craigslist, Inc. ("craigslist") will, and hereby does, move this Court for default judgment

6   against Defendant Alecksey Kerbel.  The clerk entered the default of Defendant Alecksey Kerbel

7   on September 21, 2011.

8         craigslist is entitled to judgment against Defendant Kerbel on claims pled in the

9   Complaint.  craigslist requests that this Court enter a permanent injunction against Defendant

10  Kerbel restraining him from engaging in future violations of craigslist's rights.  craigslist also

11  requests an award of damages in an amount according to proof.

12        This Motion is based on this Notice of Motion and Motion; the accompanying

13  Memorandum of Points and Authorities in support thereof; the supporting declaration of My-Linh

14  Tran filed concurrently herewith; and the pleadings and files in this action; and such other matters

15  as may be presented at the hearing.

16  DATED:  April 6, 2012              **PERKINS COIE** LLP

17

18                                     By: _____ */s/ Brian Hennessy* _____
                                           Brian Hennessy
19                                         BHennessy@perkinscoie.com

20                                     Attorneys for Plaintiff
                                       craigslist, Inc.

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF
P&A'S ISO OF MOTION FOR DEFAULT
JUDGMENT, CV-11-3309 EMC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff craigslist, Inc. ("craigslist") operates a community-based, online classified ad website and related communication services at the domain craigslist.org.  This lawsuit derives from the intentional, malicious abuse of craigslist and the communities that use and rely on craigslist by defendant Alecksey Kerbel ("Kerbel" or "Defendant").  Kerbel developed and marketed services specifically and purposefully designed to abuse craigslist.  In particular, Kerbel used specialized software to automate the posting process and posted ads on behalf of third parties, both of which clog the craigslist website with clutter and violate craigslist's Terms of Use ("TOU").  Kerbel did so by illegally circumventing security measures that craigslist employs to guard against automated posting.  Kerbel further induced others to circumvent craigslist's security measures in order to engage in improper bulk posting in violation of the TOU.  These wrongful acts entitle craigslist to statutory and common law damages, as well as an injunction, as explained more fully below.

## II.     PROCEDURAL HISTORY

On July 6, 2011, craigslist filed a complaint against Kerbel for his development, distribution and marketing of products and services to enable automated posting of content on craigslist's services and to circumvent technological security measures on the craigslist website. The complaint alleged:  (1) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030; (3) violation of California Penal Code § 502; (4) Trademark Infringement, 15 U.S.C. §§ 1114, 1125(a), 1125(c) and 1125(d); (5) Trademark Infringement under California Law; (6) Breach of Contract; (7) Inducing Breach of Contract; (8) Intentional Interference with Contractual Relations; (9) Fraud; and (10) violation of California Business & Professions Code §17200. Electronic Case Filing Docket Entry ("DE") 1.

On July 8, 2011, service was effectuated on Kerbel by leaving the summons and Complaint with Kerbel's mother at 6445 Ranchview Lane North, Osseo, Minnesota 55311, who unequivocally stated to the process server that both she and Kerbel lived at that address.  DE 15

pp. 5-6.  Thereafter, on July 13, 2011, craigslist mailed a copy of the summons and Complaint by first class mail with postage prepaid to the same address.  DE 15, p. 3.  As explained below, these events effectuated service under both (1) FRCP 4(e)(2)(B) and (2) FRCP 4(e)(1).

*First*, FRCP 4(e)(2)(B) allows for service by (1) leaving a copy of the summons and Complaint at the individual's dwelling or usual place of abode (2) with someone of suitable age and discretion (3) who resides there.  On July 8, 2011, craigslist's process server left a copy of the summons and Complaint with Kerbel's mother, who confirmed that both she and Kerbel resided at the address located at 6445 Ranchview Lane North, Osseo, Minnesota 55311.[1]  DE 15 pp. 5-6; *see also* DE 16, 17 (Detailing the service history).  Thus, craigslist satisfied each of the elements under FRCP 4(e)(2)(B).

*Second*, FRCP 4(e)(1) authorizes a plaintiff to serve a defendant "following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located."  Since this district court is located in California, craigslist can effectuate service under California's state service rules.  California Code of Civil Procedure ("CCP") Section 415.20(b) provides that (1) if the summons and Complaint cannot with reasonable diligence be personally delivered to the defendant, service can be accomplished if they are (2) left at the defendant's usual mailing address; (3) in the presence of a competent member of the household who is at least eighteen years of age and informed of the contents thereof; and (4) are also mailed by first-class mail, postage prepaid to the Defendant at the address where copies of the summons and Complaint were left.

Here, craigslist has satisfied each of CCP Section 415.20(b)'s elements.  First, the reasonable diligence requirement has been met, since craigslist attempted to serve Kerbel personally on two different occasions without success.  DE 15 pp. 4, 5-6.  Second, craigslist left the summons and Complaint with Kerbel's mother at Kerbel's "usual mailing address."  DE 15 pp. 7-10 (proof of mailing address).  Third, Kerbel's mother admitted that she resided at the

---

[1] Nineteen days later, Kerbel's mother attempted to help her son evade service by claiming that he lived in Asia and that she "mistakenly" took the documents thinking they were for her.  DE 17-1. Notwithstanding Kerbel's mother's statement, Kerbel was served the moment his mother accepted the documents on July 8, 2011, admitting that both she and Kerbel resided at the Ranchview Lane address in Minnesota.  See FRCP 4(e)(2)(B).

1  address and the process server told Kerbel's mother that she had legal documents for Kerbel. DE

2  15 pp. 2, 5-6. Fourth, on July 13, 2011, the process server mailed the summons and Complaint by

3  first-class mail, postage prepaid to Kerbel at the address where the copies of the summons and

4  Complaint were left. DE 15 p. 3. Thus, service was also effectuated under FRCP 4(e)(1) through

5  CCP Section 415.20.

6  Thereafter, Kerbel failed to respond to the Complaint and the Clerk of the Court entered

7  default against Kerbel on September 21, 2011. DE 20. craigslist now moves for entry of default

8  judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. craigslist requests that the

9  Court enter default judgment for liability on its claims, issue a permanent injunction to stop and

10  prevent Kerbel and his agents from continuing their injurious craigslist activities, award damages

11  under the DMCA, and award damages for trademark infringement.

12  ### III.    FACTUAL BACKGROUND

13  ### A.    CRAIGSLIST'S COPYRIGHT PROTECTED WEBSITE AND TOU

14  craigslist owns and operates the website www.craigslist.org, which provides, *inter alia*, an

15  Internet-based local classified ad forum and service. Complaint ("Compl.") ¶¶ 1, 20. The

16  craigslist website allows users to post classified ads on webpages for a particular geographic area

17  and within a specific category of products or services within that geographic area. Compl. ¶¶ 24-

18  25. craigslist owns copyrights in and to its website, including, but not limited to, the post to

19  classifieds, account registration and account log in expressions and compilations. Compl. ¶ 71.

20  To restrict access to its webpages and protect its services, craigslist requires users to agree

21  to its online TOU. Compl. ¶¶ 29-30. The TOU prohibit, among other things:

22  
23  - Using any automated device or computer program that enables postings without
   each posting being entered manually (an "automated posting device"), including,
   without limitation, the use of any automated posting device to submit postings in
24  bulk;

25  - Posting ads on behalf of others, causing ads to be posted on behalf of others, and
   accessing craigslist services to facilitate posting ads on behalf of others;

26  - Using a Posting Agent (a third-party agent, service, or intermediary that posts
   content to craigslist on behalf of others) to post ads.

27  

28  

NOTICE OF MOTION AND MEMORANDUM OF
P&A'S ISO OF MOTION FOR DEFAULT
JUDGMENT, CV-11-3309 EMC

Compl. Ex. A ¶¶7(y), 8.  Furthermore, the TOU explicitly state that "[b]y using the Service in any way, you are agreeing to comply with the TOU."  Compl. Ex. A, ¶ 1.

### B.    CRAIGSLIST'S SECURITY MEASURES

craigslist employs technological security measures to enforce the TOU and to prohibit unauthorized access and use of craigslist webpages and services.  Compl. ¶¶ 29-33; 48-64.  The security measures employed by craigslist include, but are not limited to, the Complete Automated Public Turing test to tell Computers and Humans Apart ("CAPTCHA").  Compl. ¶¶ 56-60. craigslist employs the CAPTCHA security device to control users' access to portions of the craigslist website for posting content and creating accounts.  Compl. ¶¶ 56-60.  When a user seeks access to these webpages, the user is presented with a challenge-response test that appears in the form of a box containing partially obscured characters that the user must type into a separate box—this is the CAPTCHA.  Compl. ¶ 59.  If the CAPTCHA is not timely solved, the user is denied access to these sections of craigslist's website.  Compl. ¶ 60.

Phone-verified accounts ("PVA"s) are another security measure employed by craigslist. Compl. ¶¶ 52-55.  PVAs are designed to prevent repetitious, unauthorized, unlawful and abusive postings on craigslist.  They require users to provide a valid telephone number in order to create an account to post ads in certain categories.  Compl. ¶ 53.  Creation of a PVA requires a user to provide a telephone number to which craigslist sends a temporary passcode that the user must enter on the website to complete creation of an account.  Compl. ¶ 54.  If the telephone number is not verified via the passcode, the account is not created and the user is unable to post ads in categories that require a PVA.  Compl. ¶ 55.

### C.    KERBEL'S ABUSE, INFRINGEMENT, AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS

#### 1.    Kerbel's Auto-Posting Products and Services

Kerbel, operating the website and business at www.craigslist-poster.com developed, advertised, and sold products and services to automate posting ads on craigslist and circumvent craigslist's security measures – in violation of the TOU, craigslist's intellectual property rights, and other rights under the law.  Compl. ¶ 79.  Specifically, Kerbel developed, marketed, offered

and sold a tool called "Craigslist Poster," and other automated devices and related services through his interactive website www.craigslist-poster.com.  Compl. ¶¶ 80-82, 89.  Kerbel advertises that "Craigslist Poster is a tool you can use to automatically post and repost ads to craigslist," and that customers can "create a campaign" by providing the "ad details for the posting you want to put on craigslist. We take care of everything for you. . . . we'll make sure everything is in place to keep it posted for your duration and manage removing old posts and posting new ones to keep you on top."  Kerbel informs prospective customers that he will be "reposting yours ads 24/7."  Compl. ¶ 80.  In so doing, Kerbel provides third-party Posting Agent[2] services in violation of craigslist's TOU.  Moreover, Kerbel circumvents craigslist's technological measures in order to violate the TOU.  Compl. ¶¶ 79, 82.

Kerbel charges customers using a credit system.  Customers buy bundles of credits that can be used to post unauthorized advertisements on craigslist and purchase PVAs, among other things.  Compl. ¶ 82.  Kerbel advertises that: "1 Credit can be used to post an ad.  5 Credits can be used to create a craigslist[] account for posting. 10 Credits can be used to create a Phone Verified Account [PVA] for posting in certain phone unique sections of craigslist."  Compl. ¶ 82.

**2.      Kerbel's Devices for Circumventing craigslist's Security Measures**

The products that Kerbel developed, advertised, and sold also enable users to circumvent craigslist's technological security measures and to access parts of the copyright-protected craigslist website without authorization.  Compl. ¶¶ 83-84.  For example, through his website, Kerbel offers PVAs for sale.  Compl. ¶ 82.  PVAs are designed to prevent repetitious, unauthorized, unlawful and abusive postings on craigslist by requiring users to provide a valid telephone number in order to create an account to post ads in certain categories.  Compl. ¶¶ 53-55.  Kerbel advertised and sold PVAs, the purchase of which allows the user to circumvent craigslist's PVA security measure, since it obviates the need for the purchaser to provide a valid telephone number.  Compl. ¶¶ 82-84.  Likewise, Kerbel's "Craigslist Poster" circumvents craigslist's CAPTCHA security device, as it posts ads automatically, thereby obviating the need

---

[2] A third-party agent, service, or intermediary that posts content to craigslist on behalf of others. DE 1, Ex. A, ¶ 8.

NOTICE OF MOTION AND MEMORANDUM OF P&A'S ISO OF MOTION FOR DEFAULT JUDGMENT, CV-11-3309 EMC

for the user to manually enter the CAPTCHA.  *See* Compl. ¶ 80 ("Craigslist Poster is a tool you can use to automatically post and repost ads to craigslist").

### 3.     Kerbel's Use of the "CRAIGSLIST" Mark

Kerbel copied and used the CRAIGSLIST mark without authorization in the domain name of his website (craigslist-poster.com) and in marketing and selling his products and services. Compl. ¶¶ 93-100.  Kerbel did so to deliberately confuse consumers as to an affiliation, association, sponsorship or endorsement of his products and services by craigslist where none existed.  Compl. ¶¶ 96-100.

### D.     KERBEL IS UNJUSTLY ENRICHED BY HIS ABUSE, INFRINGEMENT AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS

Kerbel's refusal to participate in this litigation has significantly disadvantaged craigslist's ability to discover and recover damages attributable to the full extent of his conduct.  However, the evidence that craigslist has obtained shows that Kerbel profited from his illegal endeavors. During third-party discovery for damages craigslist received financial information for accounts associated with craigslist-poster.com.  That information indicates that Kerbel sold approximately 85,810 credits and generated $33,196.70 in profit over the course of approximately two years. Tran Decl. ¶¶ 4-9, Exs. B-E.

### E.     CRAIGSLIST IS SUFFERING MONETARY AND INTANGIBLE INJURIES FROM KERBEL'S ACTIONS

craigslist has suffered and continues to suffer monetary losses for the increased equipment, bandwidth, and personnel required to maintain the efficacy of its systems and services when they are flooded with the unauthorized posts that Kerbel enables.  Compl. ¶¶ 101-106. Moreover, craigslist has suffered harm to its reputation and goodwill as a result of Kerbel's disruption of the proper functioning of craigslist's services for legitimate users.  Compl. ¶¶ 105-106.  Kerbel encouraged and enabled craigslist users to violate craigslist's TOU and other legal rights.  Compl. ¶¶ 91-92; 171-179.  Kerbel's auto-posting and circumvention services also enable his customers to unfairly compete against legitimate users in craigslist marketplaces.  Compl. ¶¶ 23-27, 79, 104.  craigslist is founded on fairness and simplicity in its operation.  Compl. ¶¶ 23-

27.  When Kerbel disrupts these pillars, craigslist no longer operates like it should, and users become frustrated.  Compl. ¶¶ 104-106.

## IV.    DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After a defendant's default is entered by the court, the well-pled factual allegations of the complaint are taken as true.  *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *see also Microsoft Corp. v. McGee,* 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) (*citing Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995))  (a defendant in default "is deemed to have admitted all of the well pleaded allegations in the complaint").  Where the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment, the court then conducts an inquiry to ascertain the amount of damages.  *See Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957 (N.D. Cal. 2006); *see also Arista Records, Inc. v. Beker Ent., Inc.*, 298 F. Supp. 2d 1310, 1311-12 (S.D. Fla. 2003)

### A.    CRAIGSLIST IS ENTITLED TO DEFAULT JUDGMENT

The Ninth Circuit has enumerated the following factors for a district court to consider when determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied."  *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  In this case, the enumerated factors weigh heavily in favor of granting default judgment and awarding craigslist injunctive and monetary relief.

### 1.   Prejudice to craigslist

As to *Eitel* factor one, craigslist would suffer prejudice if the default judgment is not entered because craigslist would be without recourse to prevent Kerbel, his employees, representatives, and agents from infringing craigslist's rights in the future and without recourse to recover for the harm and damages he has caused craigslist already.  *See PepsiCo v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("[p]otential prejudice to [plaintiff] favors granting a default judgment."); *Elektra Entm't. Group v. Avery*, 2007 WL 2023545, at *1 (E.D. Cal. July 11, 2007) (recognizing that plaintiff would be denied the right to judicial resolution of the claims presented and would be without recourse for protection of its intellectual property rights if default judgment was not granted).

### 2.   Merits of the Substantive Claims and Sufficiency of the Complaint

*Eitel* factors two and three (merits of plaintiff's substantive claim and sufficiency of the complaint) simply "require that a plaintiff state a claim on which [it] may recover."  *Cal. Sec. Cans,* 238 F. Supp. 2d at 1175 (citations and quotations omitted); *see also Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).  craigslist's Complaint provides detailed factual allegations in support of each element of the alleged causes of action, and states a claim as to the following causes of action:

#### a.   Digital Millennium Copyright Act Violation, 17 U.S.C. § 1201

craigslist's website—specifically, its ad submission and account creation features—are works of authorship protected by craigslist's registered copyrights.  Compl. ¶¶ 65-71.  As explained in the Complaint, craigslist users must solve a CAPTCHA and, in some categories, must provide telephone verification, before they are able to access copyright-protected portions of the craigslist website for posting content and creating accounts.  Compl. ¶¶ 52-60.  Both the CAPTCHA and telephone verification system are "technological measure[s] that effectively control[] access to a [copyrighted work]."  Circumventing either of them thus violates the DMCA.  17 U.S.C. § 1201(a)(1)(A); *craigslist v. Mesiab*, No. CV 08-05064 CW, Docket Item No. 84 at *15-19 (N.D. Cal. Nov. 15, 2010) (Supporting Declaration of My-Linh Tran ("Tran Decl."), Ex. F) (awarding DMCA damages of $4,474,500 or $1,500 for each of the 2,983 copies

of CAPTCHA circumventing software sold, and $400 for each offer of a PVA); *craigslist v. Naturemarket, Inc. et al.,* No. CV 08-05065 PJH, Docket Item No. 54 at *25 (N.D. Cal. Jan. 28, 2010) (Tran Decl. Ex. G)  (awarding DMCA damages of $470,000 representing $1,000 for each of the 470 copies of CAPTCHA circumventing software estimated to have been sold by defendant).

The PVAs sold through Kerbel's website were designed and produced primarily to circumvent craigslist's security measures; they have no commercially significant purpose or use other than to circumvent these security measures; and they are marketed by Kerbel for use in circumventing craigslist's telephone verification measures.  Compl. ¶¶ 52-55, 83-84, 110-118. Additionally, Kerbel's "Craigslist Poster" auto-posting tool circumvents craigslist's CAPTCHA security measure, designed to protect access to and use of its site.  Compl. ¶¶ 52-55, 80, 83-84, 110-118.  Kerbel further intentionally induces and substantially assists others in circumventing craigslist's security measures in order to engage in improper bulk posting in violation of the TOU.  Compl. ¶¶ 79-84.

Kerbel's technology, products and services have no or limited commercially significant purpose or use other than to circumvent technological measures that effectively control access to or provide protection for the craigslist website.  Compl. ¶¶ 114-115.  Accordingly, by operating his website and offering products and services designed to circumvent craigslist's security measures, Kerbel purposefully violated 17 U.S.C. § 1201(a)(2).  *See Ticketmaster L.L.C. v. RMG Techs.*, 507 F. Supp. 2d 1096, 1111-12 (C.D. Cal. 2007) (plaintiff likely to prevail on claims that software circumventing a CAPTCHA security measure violated 17 U.S.C. § 1201(a)(2); *craigslist, Inc. v. Troopal*, Case No. 09-04741 JW, Docket Item No. 66 at * 7 (N.D. Cal. July 12, 2011) (Tran Decl. Ex. I) ("each PVA sold constitutes a DMCA-violating 'product' or 'device'").

### b. Computer Fraud and Abuse Act Violation, 18 U.S.C. § 1030

Kerbel also violated the Computer Fraud and Abuse Act ("CFAA") by:  (1) accessing craigslist's computers without authorization or in excess of authorization and obtaining information in violation of § 1030(a)(2)(C); (2) accessing craigslist's computers without authorization or in excess of authorization in furtherance of fraud in violation of § 1030(a)(4); (3)

- 10 -

1    accessing craigslist's computers without authorization or in excess of authorization and causing

2    damage in violation of § 1030(a)(5)(A); and (4) accessing craigslist's computers without

3    authorization and causing and/or recklessly causing damage in violation of §§ 1030(a)(5)(B) and

4    (C).

5         Kerbel intentionally accessed craigslist's computers in order to develop, implement,

6    update, support, test and use his products and services that were designed to enable users to

7    circumvent craigslist security measures and auto-post content on craigslist.  Compl. ¶¶ 79-85,

8    119-127.  Kerbel's activities were not authorized or exceeded authorization because they included

9    measures to circumvent craigslist's technological restrictions to control access to and use of its

10   website.  Compl. ¶ 85.

11        Kerbel knew his activities were unauthorized, and was aware of craigslist's technical

12   measures to limit access to the craigslist website.  Statements on his website noted that customers

13   can "[a]utomatically post and repost ads to craigslist 24/7" and "10 Credits can be used to create a

14   Phone Verified Account [PVA] for posting in certain phone unique sections of craigslist."

15   Compl. ¶ 82.  Furthermore, despite receiving notice that his auto-posting products and services

16   violated craigslist's TOU, Kerbel continued to operate his website.  Compl. ¶ 89.  As a result of

17   Kerbel's activities, craigslist has incurred substantial harm.  Compl. ¶¶ 101-109.

18                    **c.    Cal. Pen. Code § 502**

19        The Complaint establishes liability under Cal. Pen. Code § 502.  Kerbel accessed and used

20   the craigslist website without permission in order to obtain information, add information to the

21   craigslist website, and develop, update, operate, and maintain his products and services, which

22   harmed craigslist.  Compl. ¶¶ 83-85, 101-106, 128-139.  Kerbel violated craigslist's technological

23   restrictions to control access to its website.  Specifically, Kerbel circumvented craigslist's

24   security measures in order to access the craigslist website to develop, update, operate and

25   maintain his autoposting products and services.  Compl. ¶¶ 83-85, 101-106.  Kerbel's actions to

26   evade craigslist's access limitations are therefore in violation of Cal. Pen. Code § 502.  Compl.

27   ¶¶ 128-139; *Facebook, Inc. v. Power Ventures, Inc.*, Case No. 08-05780 JW, 2010 WL 3291750

28   at *11-12 (N.D. Cal. July 20, 2010) (finding that "accessing or using a computer, computer

- 11 -

network, or website in a manner that overcomes technical or code-based barriers is 'without permission,' and may subject a user to liability under Section 502").

### d. Trademark Infringement, 15 U.S.C. §§ 1114, 1125(a), 1125(c) and 1125(d)

The Complaint states a claim for violation of the Lanham Act.  craigslist owns four registrations in the CRAIGSLIST mark.  Compl. ¶ 77.  In violation of craigslist's rights, Kerbel has used the CRAIGSLIST mark to advertise his "Craigslist Poster," which is prominently and repeatedly displayed on his site – craigslist-poster.com.  Compl. ¶¶ 79-80.  Such use creates a substantial likelihood that users will be confused and wrongfully believe that Kerbel's products and services are associated, affiliated, connected with, sponsored by, or endorsed by craigslist.  At minimum, Kerbel's improper use of the CRAIGSLIST mark will result in initial interest confusion.  Compl. ¶¶ 94-98, 143.  *Google Inc. v. American Blind & Wallpaper*, Case No. 03-5340 JF, 2007 WL 1159950 at *6-9 (N.D. Cal. April 18, 2008) (finding that sponsored links cause initial consumer confusion, allowing the competitor to gain "a customer by appropriating the goodwill that [plaintiff] has developed in its mark") (citing *Playboy Enter., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004).

In addition, Kerbel used the CRAIGSLIST mark in the craigslist-poster.com domain name with a bad faith intent to profit from the goodwill associated with the mark.  The craigslist-poster.com domain name is identical or confusingly similar to or dilutive of the CRAIGSLIST mark, Kerbel has no intellectual property rights in the name and he has used the domain to illegally profit from the craigslist mark.  Compl. ¶¶ 100, 148-49; *Ringcentral, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1061 (N.D. Cal. 2010) (finding liability under § 1125(d) where defaulting defendants registered and used domain names incorporating Plaintiff's distinctive mark).

### e. California Common Law Trademark Infringement

The Complaint further states a claim for trademark infringement under California common law.  *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal. 2005).  As alleged in the Complaint, craigslist owns common law rights in the CRAIGSLIST mark.  Compl. ¶ 72.

1   Those common law rights have been infringed by Kerbel's actions as described above.  *Id.*

2   ¶¶ 152-155.

3              **f.        Breach of Contract and Inducing Breach of Contract**

4          The Complaint also states a claim for breach of contract.  *Careau & Co. v. Security*

5   *Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (Cal. App. 1990) (discussing the

6   elements of breach of contract).  The TOU are a contract; Kerbel breached them, including

7   sections 7 (unauthorized access to computers and disruptive activity) and 8 (posting ads on behalf

8   of others), and craigslist suffered harm as a direct result of the breaches.  Compl. ¶¶ 31-32, 79-85,

9   101-106, 156-169; *see Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx), 2008

10  WL 4772125, at *7 (C.D. Cal. Sept. 29, 2008) (denying motion to dismiss breach of contract

11  claim because "courts have held that a party's use of a website may be sufficient to give rise to an

12  inference of assent to the Terms of Use contained therein"); *Ticketmaster,* 507 F. Supp. 2d at

13  1107 (granting preliminary injunction for breach of contract claim based on use of website

14  outside the terms of use).

15         The Complaint further states a claim for Inducing Breach of Contract and explains that

16  Kerbel's illegal and harmful acts involved inducing customers of his website to use his auto-

17  posting products and services and to circumvent craigslist security measures.  Compl. ¶¶ 91-92,

18  171-177.

19            **g.        Intentional Interference With Contractual Relations**

20         The Complaint states a claim for intentional interference with contractual relations.  *See*

21  *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004); *Shamblin v.*

22  *Berge*, 166 Cal. App. 3d 118, 122-23 (Cal. Ct. App. 1985).  The Complaint identifies the TOU as

23  a valid and existing contract between craigslist and craigslist users, Compl. ¶¶ 29-32, 181, and

24  explains Kerbel's knowledge of the TOU and his intent and intentional acts to breach or disrupt

25  the contractual relationship between craigslist and its users by inducing users to use auto-posting

26  products and services and to circumvent craigslist's security measures.  Compl. ¶¶ 91-92, 180-

27  185.

28

1    The Complaint also alleges actual breach or disruption of the TOU when users were

2    induced by Kerbel to use autoposting products and services and to circumvent craigslist's security

3    measures.  Compl. ¶¶ 101, 183-185.  The Complaint alleges resulting harm and damage to

4    craigslist.  Compl. ¶¶ 101-106, 185.

5                                **h.    Fraud**

6           "Under California law, the indispensable elements of a fraud claim include a false

7    representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

8    *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quotation and citation

9    omitted).  The Complaint establishes each element with particularity.  The Complaint alleges

10   false representations and the contents of and parties to the false representations—Kerbel's

11   statements to craigslist that he would comply with the TOU when he had no intention of

12   complying and did not comply.  Compl. ¶¶ 86-90, 188-195.  The Complaint also alleges the times

13   and locations of the misrepresentations—they are each time Kerbel assented to the TOU on the

14   craigslist website by clicking the "ACCEPT terms of use" option before creating a user account

15   or posting content and by using the website.  Compl. ¶ 86.  The Complaint alleges knowledge of

16   the falsity—Kerbel knew he had no intention of complying with the TOU when he represented

17   that he would abide by them.  Compl. ¶¶ 87, 189-195.  The Complaint alleges intent to defraud—

18   Kerbel intended to gain unauthorized access to the craigslist website and services to develop,

19   update, operate, and maintain his illicit craigslist-poster.com website.  Compl. ¶¶ 85, 89, 196.

20   The Complaint alleges justifiable reliance—craigslist reasonably relied on Kerbel's affirmative

21   assent to the TOU to grant access to the craigslist website and services.  Compl. ¶ 192.  And the

22   Complaint alleges damages—Kerbel's fraud has resulted in the posting of ads on craigslist, which

23   has caused and is causing craigslist economic harm to address and combat as well as intangible

24   reputational harm with legitimate craigslist users.  Compl. ¶ 101-109,197.

25                    **(i)    Kerbel's Violations Were Knowing, Deliberate,**
                              **Intentional, Willful, and Undertaken with Conscious**
26                            **Disregard for craigslist's Rights**

27          Kerbel's actions giving rise to the claims pled in the Complaint were undertaken

28   knowingly, deliberately, intentionally, willfully, and with conscious disregard for craigslist's

- 14 -

1    rights (referred to collectively as "willfully" or "willfulness" below for simplicity).  The

2    allegations of the Complaint, which are taken as true, establish this willfulness.  *See* Compl.

3    ¶¶ 89-90, 109, 139, 149, 179, 187, 199; *see also Fair Hous. of Marin*, 285 F.3d at 906.

4    Moreover, willfulness can be inferred from a defendant's failure to defend.  *Castworld Prods,* 219

5    F.R.D. at 500; *see Fallaci v. New Gazette Literacy Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y.

6    1983); *Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (the court may infer willful infringement

7    because of default).  As alleged in the Complaint, Kerbel accessed the craigslist site with the

8    intention of violating the TOU.  Compl. ¶ 79, 86-87, 188-195.  Further, willfulness may and

9    should also be inferred from Kerbel's decision to continue to sell and support his auto-posting

10   products and services even after receiving multiple cease and desist letters from craigslist.

11   Compl. ¶ 89.  On July 30, 2009, and August 10, 2009, craigslist sent a cease and desist letter

12   using the email address privacy@craigslistemailer.com available on craigslist-poster.com's sister

13   website.  *Id.*  On August 12, 2010, and September 22, 2010, craigslist sent a cease and desist

14   letter using email and mailing addresses known to be associated with Defendant Kerbel.  *Id.*

15   Kerbel never responded to craigslist's letters and continued to market, develop, and sell his illicit

16   products and services.  *Id.*  There can be no doubt that Kerbel deliberately, willfully, and

17   intentionally violated the law and harmed craigslist.

18        The Court should find that Kerbel's actions in violation of federal statutes and the

19   common law, as alleged in the Complaint, were knowing, deliberate, intentional, willful, and

20   undertaken with conscious and callous disregard for craigslist's rights.  *See Microsoft Corp.v.*

21   *McGee*, 490 F. Supp. 2d at 878 (on default, the court looked to the factual allegations in the

22   complaint and held that defendant willfully violated the Copyright Act); *Divineo*, 457 F. Supp. 2d

23   957 (holding defendant in default and willful violation of the DMCA).

24                    **3.    Sum of Money at Stake**

25        As for the fourth *Eitel* factor, the sum of money at stake is not inconsequential, but neither

26   is the harm caused by Kerbel and autoposters like him.  See Compl. ¶¶ 101-104.  Every year

27   craigslist expends a substantial amount of resources to remedy the actions of autoposters, like

28   Kerbel, including incurring costs for increased equipment, bandwidth, and personnel to develop

- 15 -

counter measures, investigate incidents, remove unauthorized ads, and address user complaints as a result of auto-posting products and services. *Id.* Moreover, Kerbel's continued maintenance of his website despite cease and desist letters and his unwillingness to participate in this litigation, required craigslist to expend substantial resources to identify and locate, sue, and serve him along with the resources required to seek a default judgment with limited information.

**4.      The Possibility of Disputed Material Facts and Whether Default was Due To Excusable Neglect**

As to the fifth and sixth *Eitel* factors, there is virtually no possibility of a dispute as to material facts or of excusable neglect for the default in this case. *See Castworld Products*, 219 F.R.D. at 500-01. The factual allegations of the Complaint, now admitted, and the supporting evidence provided in the declarations and exhibits with this motion show—with no room for equivocation—that Kerbel engaged in the acts alleged. Kerbel was served with the Complaint but has repeatedly chosen not to participate in this litigation. There is no evidence that Kerbel's default is due to excusable neglect.

**5.      Policy Favoring Decisions on the Merits**

As for the seventh *Eitel* factor (policy in favor of decisions on the merits), Kerbel's refusal to appear, respond, or otherwise defend against craigslist's complaint, as well as his active efforts to hide, makes a resolution on the merits impossible. *Cal. Sec. Cans.*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

In sum, craigslist is entitled to default judgment against Kerbel establishing liability on all of the causes of action alleged in the Complaint.

**B.      CRAIGSLIST IS ENTITLED TO APPROPRIATE RELIEF**

With default judgment justified, the Court next conducts an inquiry into appropriate relief, including the amount of damages. *See, e.g.*, *3A Entm't Ltd. v. Constant Entm't, Inc.*, Case No. 08-01274 JW, 2009 WL 248261 at *6 (N.D. Cal. Jan. 30, 2009). craigslist seeks injunctive and monetary relief.

### 1. Injunctive Relief Is Appropriate and Necessary

At a minimum, craigslist is entitled to injunctive relief pursuant to Kerbel's liability for trademark infringement under 15 U.S.C. § 1114, 1125(a), 1125(c) and 1125(d); and breach of contract.  The DMCA also provides grounds for the Court to award any reasonable injunctive relief to prevent or restrain violations of its anti-circumvention provisions.  17 U.S.C. § 1203(b)(1); *see Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000).  The Court's power to grant a permanent injunction against Kerbel and those acting in concert with him is therefore broad.  For example, the Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain from infringement of a copyright." 17 U.S.C. § 502(a).  Indeed, courts "regularly issue injunctions as part of default judgments." *Arista Records*, 298 F. Supp. 2d at 1314; *see also Castworld Prods*, 219 F.R.D. at 502; *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Kerbel developed and sold products and services specifically designed to circumvent craigslist's security measures.  Compl. ¶¶ 79, 82-84.  He engaged in such conduct despite being fully aware that it violated craigslist's TOU and legal rights.  Compl. ¶¶ 87-90.  Kerbel's conduct has damaged craigslist, and caused and continues to cause irreparable and incalculable harm and injury to craigslist.  Compl. ¶¶ 105, 117, 126, 138, 169, 177, 185, 197, 202.  As explained in the Complaint, craigslist incurs substantial costs to investigate, remediate, prevent and combat autoposters, such as Kerbel.  Compl. ¶¶ 101-104.  Moreover, craigslist has suffered lost reputation and goodwill as frustration with the impacts from Kerbel's and other's misconduct has grown and craigslist has struggled to stop them.  Compl. ¶¶ 105-106.

From the onset of this matter Kerbel was defiant, continuing to sell and support his auto-posting products and services even after receiving multiple cease and desist letters from craigslist.  Compl. ¶ 89.  If not permanently enjoined, he will continue to violate craigslist's rights.  craigslist therefore requests that the Court enter a permanent injunction against Kerbel, and those acting in concert with them, as set forth in the Complaint's Prayer for Relief ¶ 1 and as included in the Proposed Order filed with this Motion.

2. **Statutory Damages Under the DMCA Are Also Appropriate and Necessary**

craigslist has been damaged and Kerbel has wrongly profited from his abuse of craigslist. Kerbel's refusal to participate in this litigation, however, has severely prejudiced craigslist's ability to quantify the full extent of his wrongful activity. Despite the inability of craigslist to present a complete picture of damages, it has nevertheless adduced sufficient evidence to establish statutory damages for violations of the Digital Millennium Copyright Act. 17 U.S.C. § 1203(c)(3).

The DMCA allows a successful plaintiff to recover an award of statutory damages in lieu of actual damages. *See* 17 U.S.C. § 1203(c)(3)(A). The DMCA authorizes statutory damages of between $200 and $2,500 per act of circumvention, device, product, component, offer, or performance of service, 17 U.S.C. § 1203(c)(3)(A), and courts have wide discretion to determine the appropriate level of statutory damages within this range. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). craigslist requests statutory damages for each circumvention "device" or "product" sold by Kerbel, or in the alternative, for each "offer" of a circumventing "device" or "product." *See* 17 U.S.C. § 1203 (c)(3)(A).

Kerbel advertised "Craigslist Poster," which allowed Kerbel and his customers to circumvent craigslist's security measures, including its CAPTCHA, and "automatically post and repost ads to craigslist." Compl. ¶¶ 80-81. Kerbel, through his website, offered "credits" that enabled customers to post unauthorized advertisements to craigslist, purchase PVAs, and circumvent craigslist's security measures. Compl. ¶ 82

In the course of its damages discovery, craigslist received transaction logs from PayPal, Inc. ("Paypal") and Plimus, Inc. ("Plimus"), both of which are payment processors used for sales related to Kerbel's craigslist-poster.com website. Excerpts of the PayPal and Plimus transaction logs are attached as Tran Decl. Exs. B-E. This information shows that Kerbel sold at least 60,850 credits through the craigslist-poster.com website via Plimus, and at least 24,960 credits through the craigslist-poster.com website via PayPal, for a total of 85,810 credits. Tran Decl. ¶¶ 5, 8. Unfortunately, the PayPal and Plimus records only provide the number of credits sold and do not

1    disclose whether the purchaser used credits to post ads with "Craigslist Poster," which

2    circumvents craigslist's CAPTCHA, or to purchase a PVA.  Had Kerbel participated in the

3    litigation, craigslist would then have been able to obtain his records and depose him regarding the

4    precise number of CAPTCHA circumventions and PVAs purchased.  However, because Kerbel

5    defaulted, craigslist was only able to obtain his PayPal and Plimus records, which do not provide

6    this information.  Accordingly, as in many cases where the defendant refuses to participate in the

7    litigation, craigslist is forced to make certain assumptions regarding the number of DMCA

8    violations.

9          Kerbel's website advertised that "1 Credit can be used to post an ad.  5 Credits can be

10    used to create a craigslist[] account for posting. 10 Credits can be used to create a Phone Verified

11    Account [PVA] for posting in certain phone unique sections of craigslist."  Compl. ¶ 82.

12    Conservatively assuming that all 85,810 credits were used to purchase PVAs at 10 credits per

13    PVA, then Kerbel sold at least 8,581 circumventing devices.  If the Court applies the low end of

14    the statutory range ($200 per device) to the 8,581 devices sold, the total statutory damage award

15    is $1,716,200.  *craigslist, Inc. v. Troopal*, Case No. 09-04741 JW, Docket Item No. 66 at *7

16    (Tran Decl. Ex. I) ("each . . . PVA sold constitutes a DMCA-violating 'product' or 'device'");

17    *craigslist, Inc. v. Naturemarket, Inc. et al.*, Case No. 08-05065 PJH, Docket Item No. 54 at *25

18    (N.D. Cal. Jan. 28, 2010) (Tran Decl. Ex. G) ("applying the $1,000 statutory damage multiplier to

19    each of the 470 devices sold").

20          In the alternative, the DMCA allows for damages based on each "offer" to sell a DMCA

21    circumventing device.  *See craigslist, Inc. v. Realworks Group, LLC,* Case No. CV 08-05072 JW,

22    Docket Item No. 44 at *6-7 (N.D. Cal. Oct. 29, 2009) (Tran Decl. Ex. H) (awarding statutory

23    damages of $200 for each of the 1,000 DMCA violating accounts offered for sale on defendant's

24    website); *craigslist v. Mesiab,* Case No. CV 08-05064 CW, Docket Item No. 84 at *18-19 (N.D.

25    Cal. Nov. 15, 2010) (Tran Decl. Ex. F) (awarding statutory damages of $400 for each of the 1,000

26    Phone Verified Accounts offered for sale on defendant's website).  Kerbel sold 85,810 credits.

27    Each PVA is a circumventing device.  Kerbel's website states that 10 credits will buy 1 PVA.  At

28    a minimum, the 85,810 credits sold derived from 85,810 offers to sell those credits.  Since 10

- 19 -

credits buys 1 PVA, then Kerbel offered to sell 8,581 PVAs (85,810 credits divided by 10 credits per PVA) based on his sales records.  Applying the low end of the DMCA range ($200 per offer) results in a damage award of $1,716,200.

An even more conservative damages analysis based on Kerbel's offers under the DMCA can be derived from his website advertisements.  Kerbel advertised credits on his website in bundles, the largest of which was 10,000 credits.  Tran Decl. Ex. A, p. 3.  If the Court conservatively assumes that the 10,000 credits was his only offer, then Kerbel offered 1,000 PVAs through his website.  If the Court applies the low end of the statutory range ($200 per offer) to the 1,000 PVA offers, the total statutory damage award is $200,000 based on Kerbel's offers.

### 3. Profits For Trademark Infringement Are Also Appropriate and Necessary

craigslist is entitled to recover Kerbel's profits as a result of his trademark infringement. 15 U.S.C. § 1117(a) ("plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . .  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").  craigslist has established that Kerbel received at least $33,196.70 in sales for the products and services he offered at craigslist-poster.com, and Kerbel has not proved any cost or deductions as to these products (although craigslist's calculations generously deduct all chargebacks and refunds in the transaction logs provided by Defendant's payment processor for these products).  Tran Decl. ¶¶ 4-9, Exs. B-E.  Therefore, craigslist respectfully requests that the Court award it $33,196.70 in profits for Kerbel's trademark infringement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**V.     CONCLUSION**

2      For the foregoing reasons, craigslist respectfully requests that the Court grant its Motion

3   for Default Judgment.

4   DATED:  April 6, 2012                    **PERKINS COIE** LLP

5                                            By:      */s/ Brian Hennessy*
                                                      _____
6                                                     Brian Hennessy
                                                      BHennessy@perkinscoie.com
7                                            Attorneys for Plaintiff
                                             craigslist, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF
P&A'S ISO OF MOTION FOR DEFAULT
JUDGMENT, CV-11-3309 EMC