**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIGSLIST, INC., | No. C-11-3309 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| ALECKSEY KERBEL, *et al.*, | **(Docket No. 24)** |
| Defendants. | |
| _____/ | |

## I.    INTRODUCTION

Plaintiff craigslist filed suit against Alecksey Kerbel, alleging violations of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201; Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; Cal. Penal Code § 502; Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c)-(d); Common Law Trademark Infringement; Breach of Contract; Inducing Breach of Contract; Intentional Interference with Contractual Relations; and Fraud.  craigslist's claims stem from Mr. Kerbel's alleged sales of products and services designed to automatically post to craigslist and circumvent its security and copyright protection mechanisms.  Pending before the Court is Plaintiff's Motion for Default Judgment.  Docket No. 24.  No opposition has been filed.  Having considered Plaintiff's submissions and oral argument, and for the reasons set forth below, the Court **GRANTS** Plaintiff's motion for default judgment.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Plaintiff craigslist operates the website, www.craigslist.org, which provides online localized classified advertising service and related online services.  Compl., Docket No. 1, ¶ 1.  Its headquarters is in San Francisco, CA, and it maintains the majority of its servers and computers

**United States District Court**
For the Northern District of California

here. *Id.* ¶ 21. craigslist enables authorized users to post classified ads on its website based on their geographic area and the product or service category in which they seek to advertise. *Id.* ¶¶ 23-25. The site lists ads within each category in reverse chronological order, so that the newest posts are at the top of the list. *Id.* ¶ 26.

craigslist governs access to its site with its Terms of Use ("TOU"). *Id.* ¶ 29. Each user who seeks to post to the site must accept the TOU before the ad is posted. *Id.* ¶¶ 30, 42-43. The TOU prohibit, *inter alia*, repeatedly posting the same or similar content, posting said content in more than one category or geographic area, posting ads on behalf of others, using a Posting Agent[1] to post ads, attempting to gain unauthorized access to craigslist's computer systems or engaging in any activity that disrupts or interferes with craigslist, using any automated device or computer program that enables non-manual postings, and making available content that uses automated means to download data from craigslist. *Id.* ¶ 32. The TOU also inform users of craigslist's location in California and secures users' consent to the personal and exclusive jurisdiction of San Francisco County, CA courts. *Id.* ¶ 34.

Once a user accepts the TOU, he or she must successfully respond to a CAPTCHA[2] challenge. *Id.* ¶ 44. CAPTCHAs are challenge-response tests in the form of partially obscured characters that the user must read and type into a box. *Id.* ¶ 59. They are designed to ensure that humans, rather than machines and automated devices, post ads. *Id.* ¶ 57. A user may also create an account to manage his or her postings, which sometimes requires a phone-verified account ("PVA"). *Id.* ¶ 46. PVAs are designed to prevent repetitious and unauthorized postings to craigslist by requiring users to provide a valid phone number in order to create an account. *Id.* ¶ 53. In addition to CAPTCHAs and PVAs, craigslist uses additional security measures to protect its site and systems, including IP address blocking, which blocks multiple ads from the same IP address within a short period of time. *Id.* ¶ 62.

---

[1] A third-party agent, service, or intermediary that posts content to craigslist on behalf of others.

[2] Completely Automated Public Turing test to tell Computers and Humans Apart.

**United States District Court**

For the Northern District of California

1    craigslist is a work of authorship protected by copyright law. *Id.* ¶ 69. Plaintiff owns all

2    rights to craigslist's website, including the post-to-classifieds, account registration and account log-

3    in expressions, and has registered copyrights for these features. *Id.* ¶¶ 70-71. It also owns and has

4    registered the trademark CRAIGSLIST, which it has used since 1995. *Id.* ¶¶ 72-73.

5        Defendant Alecksey Kerbel is the owner and operator of the www.craigslist-poster.com

6    website. Compl. ¶ 14. Defendant Kerbel is an individual residing in Osseo, Minnesota. *Id.* Plaintiff

7    alleges Defendant develops, offers, and markets services designed to enable illegitimate uses of

8    craigslist. *Id.* ¶ 5. For example, Craigslist Poster allows customers to create a campaign through

9    which Defendant will repeatedly auto-post ads to craigslist. *Id.* ¶ 80. Defendant will repost

10   customers' ads "24/7," in multiple geographic areas and categories. *Id.* ¶ 81. Customers purchase

11   "credits" from Defendant which they can use to purchase various services, including ad-posting (1

12   credit), creating craigslist accounts (5 credits), and creating a PVA for posting in PVA-required

13   categories (10 credits). *Id.* ¶ 82.

14       Defendant's services require Defendant and his customers to circumvent craigslist's security

15   measures, create fraudulent accounts and PVAs, and fraudulently accept the TOU. *Id.* ¶¶ 83-92.

16   Defendant also uses the CRAIGSLIST mark without authorization. *Id.* ¶¶ 93-100. Defendant has

17   continued his activities despite receiving multiple cease and desist letters from craigslist. *Id.* ¶ 89.

18   Defendant's activities burden craigslist's systems and cause it to incur expenses to increase server

19   capacity, provide additional customer service and support for its legitimate customers, and

20   investigate and enforce its policies. *Id.* ¶¶ 6-7, 101-06.

21       Plaintiff filed its complaint on July 6, 2011, asserting ten causes of action based on the above

22   conduct. It served Defendant on July 8, 2011, by leaving the summons and complaint with

23   Defendant's mother at her home in Osseo, Minnesota. Mot. at 2; Docket No. 15. at 5-6. His mother

24   informed the process server that Defendant lived at that address. Docket No. 15 at 5-6. On July 31,

25   2011, Plaintiff mailed a copy of the summons and Complaint by first class mail with postage prepaid

26   to the same address. Docket No. 15 at 3. On September 21, 2011, the Clerk entered default against

27   Defendant. Docket No. 20.

28

United States District Court

For the Northern District of California

1    Plaintiff now seeks default judgment for nine of those causes of action under the Digital

2  Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201; Computer Fraud and Abuse Act

3  ("CFAA"), 18 U.S.C. § 1030; Cal. Penal Code § 502; Lanham Act, 15 U.S.C. §§ 1114, 1125(a),

4  1125(c)-(d); Common Law Trademark Infringement; Breach of Contract; Inducing Breach of

5  Contract; Intentional Interference with Contractual Relations; and Fraud.  Plaintiff seeks a

6  permanent injunction prohibiting Defendant from continuing its activities, and damages under the

7  DMCA and for trademark infringement.  Mot. at 4.

8    On May 7, 2012, the Court issued an order requesting supplemental briefing and/or evidence

9  on two issues.  Docket No. 25.  First, the Court requested proof that craigslist had served Mr. Kerbel

10  with the motion for default judgment not less than 35 days before a hearing on the motion.  Second,

11  the Court requested supplemental briefing as to whether there was personal jurisdiction over Mr.

12  Kerbel.  craigslist has now filed a proof of service by U.S. mail, Docket No. 27, and a supplemental

13  brief, Docket No. 28.

14                          **III.   DISCUSSION**

15  A.    Jurisdiction

16    "When entry of judgment is sought against a party who has failed to plead or otherwise

17  defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

18  matter and the parties."  *Levi Strauss & Co. v. Toyo Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1092

19  (N.D. Cal. 2009) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir.1999)).

20    In this case, subject matter jurisdiction is apparent as Plaintiff raises federal statutory claims,

21  and its state law claims are integrally related to the federal claims.  *See Craigslist, Inc. v.*

22  *Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051-52 (N.D. Cal. 2010) (so holding).  However,

23  because Defendant is a Minnesota resident, it is necessary to examine personal jurisdiction.  In

24  addition, the Court must assess the adequacy of service of process.

25        1.    Personal Jurisdiction

26    "[A] court may exercise personal jurisdiction over a defendant consistent with due process

27  only if he or she has 'certain minimum contacts' with the relevant forum "such that the maintenance

28  of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Yahoo! Inc. v.*

United States District Court

For the Northern District of California

1    *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (quoting

2    *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Where, as here, no federal statute

3    authorizes personal jurisdiction, the Court applies the law of the state in which the court sits.

4    *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  California's long-arm

5    statute, Cal. Code Civ. P. § 410.10, extends to the limits of federal due process requirements, so the

6    Court need only conduct jurisdictional analysis under federal due process.  *Schwarzenegger v. Fred*

7    *Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

8           In this case, Plaintiff argues that Defendant's consent to craigslist's TOU, which includes a

9    California forum selection clause, and Defendant's minimum contacts with California suffice to

10   establish specific personal jurisdiction.  *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d

11   1039, 1052-54 (N.D. Cal. 2010) (so holding based on similar conduct); *Craigslist, Inc. v. Doe 1*,

12   C09-4739 SI BZ, 2011 WL 1897423, at *2-3 (N.D. Cal. Apr. 25, 2011) *report and recommendation*

13   *adopted sub nom. Craigslist, Inc. v. Meyer*, C 09-4739 SI, 2011 WL 1884555 (N.D. Cal. May 18,

14   2011) (same).  In addition, Plaintiff argues that Defendant's interactive commercial website creates

15   general personal jurisdiction.

16                  a.      Specific Personal Jurisdiction

17          The Ninth Circuit has established a three-prong test for analyzing a claim of specific

18   jurisdiction:

19                          (1)     The non-resident defendant must purposefully direct activities
                          or consummate some transaction with the forum or resident thereof; or
20                        perform some act which he purposefully avails himself of the privilege
                          of conducting activities in the forum, thereby invoking the benefits
21                        and protection of its laws;

22                          (2)     the claim must be one which arises out of or relates to the
                          defendant's forum-related activities; and

23
                            (3)     the exercise of jurisdiction must comport with fair play and
24                        substantial justice.

25   *Schwarzenegger*, 374 F.3d at 802.  Plaintiff bears the burden of satisfying the first two prongs; if it

26   does, the burden shifts to Defendant to present a "compelling case that the exercise of jurisdiction

27   would not be reasonable."  *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228

28   (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1101 (2012) (internal citations and quotation marks omitted).

i.      Purposeful Direction

Under the first prong of the specific jurisdiction test, Plaintiff must establish that Defendant either purposefully availed himself of the privilege of conducting activities in California, or purposefully directed his activities toward California.  *See Schwarzenegger*, 374 F.3d at 802.  The Ninth Circuit has noted that purposeful availment and purposeful direction are two distinct concepts.  "A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."  *Id.* (internal citations omitted).  In this case, it is undisputed that intellectual property claims sound in tort, and Plaintiff correctly focuses on the purposeful direction analysis.  *See* Supp. Brf. at 2 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

In analyzing purposeful direction, the Court applies the "effects" test first established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1983).  *See Schwarzenegger*, 374 F.3d at 803.  According to this test, Defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state.  *See Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

When evaluating purposeful direction in the context of websites, courts typically examine the "level of interactivity and commercial nature of the exchange of information that occurs on the website to determine if sufficient contacts exist to warrant the exercise of jurisdiction."  *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir.1997) (internal quotation marks omitted) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *Maritz v.. Cybergold, Inc.*, 947 F. Supp. 1328, 1332-33 (E.D. Mo. 1996)); *Jeske v. Fenmore*, No. SACV 08-01015 DOC (MLGx), 2008 WL 5101808, at *4 (C.D. Cal. Dec.1, 2008) ("In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is.") (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)).  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity

United States District Court

For the Northern District of California

1   conducts over the Internet." *Cybersell*, 130 F.3d at 419 (9th Cir.1997) (quoting Zippo, 952 F. Supp.

2   at 1124).

3       Here, Defendant's interactive commercial website is sufficient to establish purposeful

4   direction.  As Plaintiff explains, Defendant's website invites users, including California residents, to

5   purchase automated craigslist posting services.  Supp. Brf. at 3; Tran Decl. ¶ 3, Exs. 1-4.  The

6   website offers technical support and customer service both through direct contact with Defendant

7   and through frequently asked questions, and offers step-by-step systems for creating "campaigns"

8   using Defendant's automated posting services.  *Id.*  In addition, the object of Defendant's interactive

9   services offered through its website is to post content to Plaintiff's site, based in California.

10  Defendant also expressly targeted California residents by offering posting services in the Bay Area

11  section of craigslist.  Tran Decl. ¶ 4, Ex. 5.  Plaintiff presents evidence that California residents have

12  purchased Defendant's products.  *Id.* ¶¶ 11-13.  Courts have found similar activities sufficient to

13  support purposeful availment and direction.  *See, e.g., Gucci Am., Inc. v. Wang Huoqing*, C-09-

14  05969 JCS, 2011 WL 31191, at *6 (N.D. Cal. Jan. 3, 2011) *report and recommendation adopted sub*

15  *nom. Gucci Am. v. Wang Huoqing*, C 09-05969 CRB, 2011 WL 30972 (N.D. Cal. Jan. 5, 2011)

16  (finding purposeful availment in default judgment motion where websites offered and sold

17  counterfeit handbags within the forum) (citing *Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074,

18  1077–78 (C.D. Cal.1999) (holding that the exercise of personal jurisdiction was appropriate based

19  on the "highly commercial" nature of defendant's website); *Allstar Marketing Group, LLC, v. Your*

20  *Store Online, LLC*, 666 F.Supp.2d 1109, 1122 (C.D. Cal. 2009) (holding that the exercise of

21  personal jurisdiction was appropriate because "by operating a highly commercial website through

22  which regular sales of allegedly infringing products are made to customers in [the forum state], [the

23  defendant has] purposefully availed [itself] of the benefits of doing business in this district")).

24  Defendant's use of third-party California companies to process payments on its site, Tran Decl. ¶ 14,

25  lends further support to the claim that it has purposefully availed itself of the forum.  *See IO Group,*

26  *Inc. v. Pivotal, Inc.*, No. C 03–5286 MHP, 2004 WL 838164, at *4 (N.D. Cal. April 19, 2004) ("The

27  fact that consumers can purchase products directly from defendants' websites through a California-

28  based third-party payor, PayPal, Inc, indicates a relatively high level of interactivity.").

1    Indeed, another case involving similar claims by craigslist sums it up well:

2    > Plaintiff has demonstrated that Defendants maintained a commercial
3    > website that was interactive and open to commerce with California
     > residents.  *See IO Group, Inc. v. Pivotal, Inc.*, No. C 03–5286 MHP,
4    > 2004 WL 838164, at *2 (N.D. Cal. April 19, 2004).  Defendants also
     > knowingly and intentionally accessed and used Plaintiff's website and
5    > developed, marketed, and sold their software and services for the sole
     > purpose of enabling users to bypass the security measures of Plaintiff's
6    > website, in violation of its TOUs.  Because Plaintiff is headquartered
     > in California and maintains its website in California, Defendants'
7    > actions directly targeted California, and Defendants knew that Plaintiff
     > would suffer the brunt of its harm in California.  Taking these facts
8    > into consideration, the undersigned finds that Plaintiff has sufficiently
     > shown that Defendants purposefully directed their conduct at
9    > California.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et
     > L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006).

10   *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010).  Indeed, with

11   respect to Defendant's knowledge that craigslist was based in California, the Complaint alleges that

12   craigslist's TOU "notify users of, among other things, the location of CL servers in 19 California."

13   Compl. ¶ 34.  Accordingly, the Court finds that craigslist has satisfied the purposeful direction

14   factor.

15              ii.      Arising Out of Forum-Related Activity

16        For the same reasons stated above with respect to purposeful direction, Plaintiff's claims

17   here arise out of forum-related activity.  *See id.* ("Here, Defendants' willful copyright infringement,

18   trademark infringement, and their sale of products and services that circumvent Plaintiff's security

19   measures were intentionally directed at Plaintiff, a company headquartered in the forum state, and

20   the harm caused by Defendants was felt in California.").

21              iii.     Reasonableness

22        Finally, exercising jurisdiction in this case is reasonable.  Once a plaintiff has demonstrated

23   the first two factors of the specific personal jurisdiction test, the burden shifts to the defendant to

24   demonstrate that exercising jurisdiction would not be reasonable.  "[W]here a defendant who

25   purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must

26   present a compelling case that the presence of some other considerations would render jurisdiction

27   unreasonable." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir.1993) (citing

28   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Here, Defendant has failed to appear

and thus has not rebutted the presumption of reasonableness. *See Naturemarket*, 694 F. Supp. 2d at 1054. "[T]here is nothing in the record suggesting that it would be inconvenient or otherwise unfair to require Defendant[] to defend against this action in California." *Id.*

Accordingly, the Court finds that it may exercise specific personal jurisdiction over Defendant.

b.   Consent to Jurisdiction

Alternatively, the Court may exercise personal jurisdiction over Defendant based on his consent to the craigslist terms of use, which contain a California forum selection clause. "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). "[T]he court need not embark on a 'minimum contacts' analysis where the defendants have consented to California jurisdiction." *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991).

In this case, craigslist's TOU state, "[y]ou and craigslist agree to submit to the personal and exclusive jurisdiction of the courts located within the county of San Francisco, California." Compl. ¶ 35, Exh. A, Section18. In the face of this consent, "[t]he only issue for the court is whether the contracts are unfair or unreasonable." *Zenger-Miller*, 757 F. Supp. at 1069. "Forum selection clauses, such as paragraph 18 in the TOUs, are presumptively valid." *Naturemarket*, 694 F. Supp. 2d 1039, 1052 (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). In cases such as this, courts have upheld these clauses when the defendant has not appeared to raise any challenges to the clause. *See id.* at 1052-53 (finding personal jurisdiction based on consent to the forum selection clause in TOUs where defendant failed to appear). There is no indication that the contracts are either unfair or unreasonable in the instant case. Indeed, enforcement of the forum selection clause is consistent with conventional personal jurisdiction analysis.

Therefore, the forum selection clause in this case is an alternative basis for personal jurisdiction over Defendant. Because there are two bases for personal jurisdiction, the Court need not consider Plaintiff's argument regarding general personal jurisdiction.

United States District Court

For the Northern District of California

2.      Adequacy of Service of Process

In deciding whether to grant or deny a default judgment, a court must also "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

Rule 4(e)(2)(B) of the Federal Rules of Civil Procedure permits service by leaving a copy of the Summons and Complaint at the defendant's place of residence with another person of suitable who lives at that residence.  In addition, Rule 4(e)(1) allows for service in accordance with the law of the state where the plaintiff brought suit or where the defendant resides.  California Code of Civil Procedure 415.20(b) provides that, if a plaintiff cannot effect personal service with reasonable diligence, she may leave a copy of the summons and complaint with another adult resident at the defendant's address and thereafter mail another copy of the paperwork to the defendant at the same address.

In the instant case, Plaintiff has satisfied both approved methods of effecting service. Plaintiff attempted personal service once before effecting service through Defendant's mother. Docket 15 at 4-6.  Thereafter, on July 8, 2011, Plaintiff left the summons and complaint with Kerbel's mother, who, according to the process server's sworn declaration, confirmed that Alecksey Kerbel lived at that address and agreed to accept the documents for him. *Id.* at 2, 5-6.  Plaintiff also enlisted a private investigator to confirm that Defendant accepted mail at that address. *Id.* at 7-10.

On July 25, 2011, Plaintiff received a letter from Kerbel's mother attaching one copy of the service documents, which stated that she had mistakenly accepted the documents thinking they were for her, and that her son was an adult and lived in Asia. *See* Poh Decl., Docket No. 17, Ex. A.  This letter directly contradicts the process server's sworn statements and other evidence obtained by the private investigator that Defendant still accepts mail at that address.  However, such a letter would be insufficient to rebut the "prima facie evidence of valid service" from the plaintiff's signed return of service, even if it were sworn under penalty of perjury. *See craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 513 (N.D. Cal. 2011) (on motion to vacate default judgment, finding service of process valid where process server reported that he left papers with Chad, a resident who confirmed that the

United States District Court

For the Northern District of California

1   defendant lived at that address, despite testimony from the defendant and Chad that defendant did

2   not live there and that Chad always told process servers that defendant did not live there) (citing,

3   *e.g.*, *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007)).

4         Accordingly, service of the summons and complaint is proper.  In addition, Plaintiff served a

5   copy of the request for entry of default on Defendant at his Minnesota address.  *See* Docket No. 18.

6   Finally, in response to this Court's order, Plaintiff filed a certificate of service attesting to the fact

7   that it had served its motion for default judgment and accompanying papers on Defendant via U.S.

8   mail.  *See* Docket Nos. 27, 28-17.

9   B.   <u>Legal Standard for Default Judgment</u>

10        After entry of default, the Court may grant a default judgment on the merits of the case.  *See*

11  Fed. R. Civ. P. 55.  The "decision whether to enter a default judgment is a discretionary one" as a

12  defendant's default alone does not entitle a plaintiff to a court-ordered judgment.  *Aldabe v. Aldabe*,

13  616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising that discretion, the Court considers the following

14  factors:

15             (1) the possibility of prejudice to the plaintiff; (2) the merits of
               plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)
16             the sum of money at stake in the action; (5) the possibility of a dispute
               concerning material facts; (6) whether the default was due to
17             excusable neglect; and, (7) the strong policy underlying the Federal
               Rules of Civil Procedure favoring decisions on the merits.
18

19  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, upon entry of default, a

20  court must take as true all factual allegations in the complaint except those related to the amount of

21  damages.  *See Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *Geddes v. United*

22  *Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

23  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient,

24  are not established by default."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

25  C.   <u>Merits of Motion for Default Judgment</u>

26        The majority of the above factors weigh in favor of default judgment.  For example, if the

27  motion for default judgment were to be denied, then Plaintiffs would likely be left without a remedy.

28  *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at

1  *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them

2  without a remedy.  Prejudice is also likely in light of the merits of their claim."); *Pepsico, Inc. v.*

3  *Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default

4  judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  The remedy

5  sought by Plaintiff includes statutory damages to which Plaintiff would be entitled under federal

6  law.  Although the sum of money at stake is substantial, as discussed below, Defendant seeks the

7  lowest level of damages permitted under the DMCA.  *See Craigslist, Inc. v. Naturemarket, Inc.*, 694

8  F. Supp. 2d 1039, 1060 (N.D. Cal. 2010) (finding default judgment damages in the range of $1.8-

9  $4.9 million appropriate given similar allegations of willful conduct).  In addition, because

10  Defendant has not filed an answer to the complaint, there is little to suggest that there is a possibility

11  of a dispute concerning material facts, and it is unlikely that Defendant's default was due to

12  excusable neglect, especially when Plaintiffs served not only the summons and complaint but also

13  the request for entry of default on Defendant but still received no response.  *See* Docket No. 15

14  (proof of service of summons and complaint); Docket No. 18 (proof of service of motion for entry of

15  default).

16      The only factors that deserve closer analysis are the second and third factors.  These factors

17  weigh the substantive merit of the plaintiff's claims and the sufficiency of the pleadings to support

18  these claims.  In order for these factors to weigh in favor of entering default judgment, Plaintiff must

19  state a claim upon which it may recover.  *Pepsico*, 238 F. Supp. 2d at 1175.  If Plaintiff would have

20  likely succeeded on the merits of its substantive claim had Defendant not defaulted, then default

21  judgment would be appropriate.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1089 (9th Cir. 1980).

22      1.    <u>DMCA</u>

23          A plaintiff alleging a violation of § 1201(a)(2) of the DMCA must
           prove:

24

25          (1) ownership of a valid copyright on a work, (2) effectively
           controlled  by a technological measure, which has been circumvented,
26          (3) that third parties can now access (4) without authorization, in a
           manner that (5) infringes or facilitates infringing a right protected by
           the Copyright Act, because of a product that (6) the defendant either
27          (i) designed or produced primarily for circumvention; (ii) made
           available despite only limited commercial significance other than

28

circumvention; or (iii) marketed for use in circumvention of the controlling technological measure.

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055-56 (N.D. Cal. 2010) (quoting *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1111 (C.D. Cal. 2007) (quoting *Chamberlain Group, Inc. v. Skylink Tech., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004))).

Similarly, to state a claim under § 1201(b)(1),[3] Plaintiff must show that Defendant's automated devices circumvented Plaintiff's technological measures that protect its rights in a copyrighted work. *See* 17 U.S.C. § 1201(b)(2) ("[T]o 'circumvent protection afforded by a technological measure' means avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure.").

"Sections 1201(a)(2) and 1201(b)(1) differ only in that 1201(a)(2), by its terms, makes it wrongful to traffic in devices that circumvent technological measures that control access to protected works, while 1201(b)(1) makes it wrongful to traffic in devices that circumvent technological measures that protect rights of a copyright owner in a work." *Naturemarket, Inc.*, 694 F. Supp. 2d at 1056 (quoting *Ticketmaster*, 507 F. Supp. 2d at 1112).

In this case, as other district courts considering Plaintiff's similar claims against other similar defendants have found, Plaintiff's complaint "sufficiently allege[s] facts going to each of these elements." *Id.* Specifically:

> Plaintiff owns valid copyrights in its website and the content within. [Compl. ¶¶ 69-71.] This content is protected by Plaintiff's CAPTCHA software and [PVAs], both of which were circumvented by Defendants. [Compl. ¶¶ 52-60, 83-84.] Plaintiff has alleged that Defendants' [auto-posting and account-creation services], . . . and [PVAs] each circumvent these security measures and provide unauthorized access to Plaintiff's copyrighted material. [Compl. ¶¶

_____

[3] "No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that – (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof." 17 U.S.C. § 1201(b)(1).

83-90.] Defendants' products and services were designed primarily for the purpose of circumventing Plaintiff's CAPTCHA and telephone verification measures. [Compl. ¶ 84.] Defendants thus enabled unauthorized access to and copies of copyright-protected portions of Plaintiff's website controlled by these measures – particularly the ad posting and account creation portions of the website. [Compl. ¶¶ 83-92.] As such, Defendants' . . . marketing[] and [sales of their services] provided third parties unauthorized access to Plaintiff's copyrighted material. [Compl. ¶ 92.] Taken together, . . . Plaintiff has sufficiently stated a claim for violation of Section 1201(a)(2) of the DMCA. Further, because the CAPTCHA Plaintiff employs also protects Plaintiff's rights in its website – a protected work – Plaintiff has also sufficiently stated a claim under Section 1201(b)(1). *See Ticketmaster*, 507 F. Supp. 2d at 1112 (holding that the plaintiff was likely to prevail on claims under both DMCA § 1201(a)(2) and (b)(1) based on claim that the defendant's software circumvented a CAPTCHA security measure protecting the website and the works encompassed within it).

*Id.* (citations altered to reflect the instant complaint); *see also craigslist v. RealWorks*, No. 08-5072 JW, Docket No. 44, at 4-5 (N.D. Cal. Oct. 29, 2009) (based on substantially similar allegations, finding that "the merits of Plaintiff's claims are deemed valid"); *craigslist, Inc. v. Troopal*, No. 09-4741 JW, Docket No. 66, at 5 (N.D. Cal. July 12, 2011) (same); *Craigslist, Inc. v. Mesiab*, C 08-05064 CW MEJ, Docket No. 53, at 16-17 (N.D. Cal. Sept. 14, 2009) *report and recommendation adopted*, C 08-5064 CW, Docket No. 55 (N.D. Cal. Oct. 19, 2009) (same); *Craigslist, Inc. v. Doe 1*, C09-4739 SI BZ, 2011 WL 1897423, at *4 (N.D. Cal. Apr. 25, 2011) *report and recommendation adopted sub nom. Craigslist, Inc. v. Meyer*, C 09-4739 SI, 2011 WL 1884555 (N.D. Cal. May 18, 2011) (finding a violation of § 1202(a)(2) with similar facts alleged). Plaintiff's complaint is thus sufficient to state a claim under the DMCA and, taking all well-pled allegations as true, Plaintiff is entitled to default judgment on these claims.

2.      <u>CFAA</u>

In order to state a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (a)(2)(C), Plaintiff must show that Defendant "intentionally access[ed] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from a protected computer." Under § 1030(a)(4), Plaintiff must allege that Defendant "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and" caused at least $5,000 in damage in a one-year period.

1    Finally, under § 1030(a)(5)(A)-(C), Plaintiff must allege that Kerbel knowingly or "intentionally

2    accesses a protected computer without authorization, and as a result of such conduct, caused damage

3    or recklessly caused damage or loss." *Naturemarket, Inc.*, 694 F. Supp. 2d at 1056-57.

4           In this case, as in *Naturemarket*, Plaintiff has adequately pled such claims:

5                  First, Plaintiff established that its computers were used in interstate
                   commerce, and therefore qualify as protected computers under the CFAA.
6                  [Compl. ¶¶ 20-22, 120.] Second, Plaintiff alleged that Defendants accessed
                   its computers in violation of the TOUs, and therefore without authorization,
7                  for the purpose of employing, implementing and updating their [auto-posting
                   products and services]. [Compl. ¶¶ 79-85, 119-27.] Finally, Plaintiff
8                  sufficiently pled that the Defendants' actions caused it to incur losses and
                   damages. [Compl. ¶¶ 101-09.]
9

10   *Naturemarket, Inc.*, 694 F. Supp. 2d at 1057 (citations altered to reflect the instant complaint); *see*

11   *also craigslist v. RealWorks*, No. 08-5072 JW, Docket No. 44, at 4-5 (N.D. Cal. Oct. 29, 2009)

12   (based on substantially similar allegations, finding that "the merits of Plaintiff's claims are deemed

13   valid"); *craigslist, Inc. v. Troopal*, No. 09-4741 JW, Docket No. 66, at 5 (N.D. Cal. July 12, 2011)

14   (same); *Craigslist, Inc. v. Mesiab*, C 08-05064 CW MEJ, Docket No. 53, at 17-18 (N.D. Cal. Sept.

15   14, 2009) *report and recommendation adopted*, C 08-5064 CW, Docket No. 55 (N.D. Cal. Oct. 19,

16   2009) (same).

17          More specifically, Plaintiff alleges that Kerbel's conduct was both knowing and intentional

18   because it was designed to circumvent craigslist's security features and Defendant had to agree to

19   the TOU with no intention of complying with it.  Compl. ¶¶ 79-85.  Kerbel also continued said

20   conduct despite receiving cease and desist letters.  *Id.* ¶ 89.  His conduct caused harm to craigslist of

21   over $5,000 per year, including increased costs associated with the burden on Plaintiff's servers,

22   investigation and enforcement costs to maintain the legitimacy of posts to the site, loss of goodwill,

23   and the need for increased customer service and support.  *Id.* ¶¶ 101-06.  Thus, the Court finds

24   Plaintiff is entitled to default judgment on its CFAA claims.

25          3.     Cal. Penal Code § 502

26          For similar reasons as discussed above with respect to the CFAA, Plaintiff also successfully

27   states a claim under California Penal Code §§ 502(c)(1)-(7).  These sections provide that one is

28   guilty of a public offense who:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services.

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

(6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Pen. Code §§ 502(c)(1)-(7).  Here, as discussed above, Plaintiff alleges that Defendant knowingly and willfully accessed craigslist's website without permission and in violation of its TOU.  As *Naturemarket* explained with respect to §§ 502(c)(1), (2), (6), and (7):

Examining Plaintiff's allegations, the undersigned finds that it has sufficiently stated a claim under Section 502(c).  With respect to subsection (c)(1), Plaintiff has alleged that Defendants knowingly accessed Plaintiff's computer system in violation of the TOUs and obtained information which they used to develop, update, operate, and maintain their auto-posting software and services.  [Compl. ¶¶ 80, 85, 130].  Under subsection (c)(2), Plaintiff has also alleged that Defendants knowingly accessed Plaintiff's computers and computer system and, without authorization, copied and made use of Plaintiff's data.  [Compl. ¶¶ 10, 83-84, 93, 131].  With respect to subsection (c)(6), Plaintiff has also alleged that Defendants knowingly and without permission provided a means of accessing its computers through their use and selling of their auto-posing software, services, and devices.  [Compl. ¶¶ 85, 89-92, 135].  These allegations are sufficient to state a claim under subsection (6).  Finally, with respect to subsection (7), Plaintiff has alleged that Defendants accessed Plaintiff's computer in an effort to create and implement their auto-posting software.  [Compl. ¶¶ 79, 83-85].  Taking the allegations in the First Amended Complaint as true, the undersigned finds Plaintiff has stated a claim for violation of Section 502(c).

United States District Court

For the Northern District of California

1   *Naturemarket*, 694 F. Supp. 2d at 1057-58 (citations altered to reflect the instant complaint).

2          The same is true in the instant case.  In addition to the subsections considered in

3   *Naturemarket*, Plaintiff here alleges that Defendant "uses or causes to be used [craigslist's]

4   computer services" in violation of (c)(3), Compl. ¶¶ 85, 91, 132; added or altered data to craigslist's

5   computer system in violation of (c)(4), Compl. ¶¶ 79, 83-85, 92, 133; and disrupted craigslist's

6   services in violation of (c)(5), Compl ¶¶ 79, 101-06, 134.

7          Accordingly, Plaintiff has stated a claim under § 502.

8          4.    Lanham Act

9          Plaintiff next asserts a claim for trademark infringement under §§ 1114 and 1125(a), (c), and

10  (d) of the Lanham Act.  Compl. ¶¶ 141-51.  To prevail on a trademark infringement claim under §

11  1114, a plaintiff must show: (1) it owns the trademark at issue; (2) the defendant has used in

12  commerce without authorization, a copy, reproduction, counterfeit or colorable imitation of the

13  plaintiff's mark in connection with the sale, distribution, or advertising of goods and services; and

14  (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive. 15

15  U.S.C. § 1141(1).  To prevail on claims under §§ 1125(a), (c), and (d), Plaintiff must show: (a) that

16  Defendant's use of its mark "is likely to cause confusion, or to cause mistake, or to deceive as to the

17  affiliation, connection, or association of such person with another person, or as to the origin,

18  sponsorship, or approval of his or her goods, services, or commercial activities by another person";

19  (c) that Defendant's use is likely to cause dilution of a famous mark through blurring or tarnishment;

20  and/or (d) that Defendant acts with a "bad faith intent to profit from that mark," and "registers,

21  traffics in, or uses a domain name that" is confusingly similar to or causes dilution of the mark.

22         Again, as *Naturemarket* observed under similar allegations:

23              Plaintiff has adequately alleged its ownership of four federal trademark
                registrations in the "craigslist" mark.  [Compl. ¶¶ 7, 142].  Plaintiff has
24              alleged that Defendants, without authorization, have used the "craigslist"
                mark by displaying the mark in the text and in the headings of sponsored
25              links on internet search engines to advertise their auto-posting products and
                services.  [Compl. ¶¶ 79-80, 93-96, 143].  Plaintiff has also shown that
26              Defendants use of the mark causes confusion and mistake and is likely to
                deceive customers and potential customers regarding the origin, affiliation,
27              association, connection or endorsement of Defendants and their auto-posting
                products and services.  [Compl. ¶¶ 93-100, 103, 106]; *see Google Inc. v.*
28              *American Blind & Wallpaper*, No. C 03-5340 JF, 2007 WL 1159950, at **6-

1
2
3
4

> 9 (N.D. Cal. April 18, 2007) (finding that sponsored links cause initial customer confusion, allowing the competitor to gain "a customer by appropriating the goodwill that [plaintiff] has developed in its mark.") (citing *Playboy Enter., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004))).  Thus, the undersigned finds Plaintiff has established its claim for trademark infringement under the Lanham Act.

5      *Naturemarket*, 694 F. Supp. 2d at 1058 (citations altered to reflect the instant complaint).

6      In addition to the provisions analyzed in *Naturemarket*, here Plaintiff alleges that its mark is

7   distinctive and famous as the mark has been in use since 1995, its site is one of the most visited sites

8   in the world with 40 million new posts each month, its mark is registered in many countries

9   throughout the world, and Plaintiff considers it to be "its most important and valuable mark."

10   Compl. ¶¶ 73-78.  Plaintiff alleges Defendant has diluted its mark through blurring or tarnishment by

11   appropriating the same mark on its website for the purpose of offering services directly relating to

12   and infringing upon Plaintiff's own website and services, and by harming the reputation of

13   Plaintiff's mark by causing increased consumer complaints.  Compl. ¶¶ 80, 94-99, 103-06, 147; 15

14   U.S.C. § 1125(c)(2)(B) ("'[D]ilution by blurring" is association arising from the similarity between

15   a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."); *id.* §

16   1125(c)(2)(C) ("'[D]ilution by tarnishment' is association arising from the similarity between a

17   mark or trade name and a famous mark that harms the reputation of the famous mark.").  Plaintiff

18   also alleges that Defendant has acted in bad faith and willfully attempted to profit from its mark by

19   using a domain name, craigslist-poster.com, that is substantially identical to Plaintiff's "craigslist"

20   mark in violation of the cybersquatting (or "cyberpiracy prevention") provision of § 1125.  Compl. ¶

21   100; § 1125(d).

22      These allegations are sufficient to state claims under § 1125(c).  Plaintiff has included

23   sufficient allegations as to the fame of its mark to warrant protection from dilution, including

24   allegations described above as to the mark's longstanding registration and the public's pervasive use

25   of the site.  *See Google Inc. v. Am. Blind & Wallpaper*, C 03-5340JF(RS), 2007 WL 1159950 (N.D.

26   Cal. Apr. 18, 2007) (describing factors under § 1125(c) such as the mark's recognition and

27   geographic reach).  Plaintiff's allegations that Defendant has harmed the functioning and reputation

28

**United States District Court**

For the Northern District of California

1    of its website, as well as caused confusion among consumers by using the identical mark, plausibly

2    allege dilution by blurring and tarnishment as defined above.

3    　　　Under the cybersquatting provision, § 1125(d), Plaintiff must allege distinctiveness; that "the

4    domain names registered by [Defendant] are identical or confusingly similar to Plaintiff's marks;

5    and [] that [Defendant] registered the domain names with a bad faith intent to profit from them."

6    *Ringcentral, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1060 (N.D. Cal. 2010) (citing *Shields v.*

7    *Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001)).  Plaintiff has alleged distinctiveness as discussed

8    above.  Under the second factor, likelihood of confusion, the key inquiry is the similarity of the

9    website to the mark; it is thus a narrower inquiry than trademark infringement. *Ringcentral, Inc. v.*

10   *Quimby*, 711 F. Supp. 2d 1048, 1060-61 (N.D. Cal. 2010).  Where, as here, Plaintiff has alleged it

11   has a distinctive mark, which Defendant has adopted by creating a website using that mark, and that

12   Defendant has demonstrated bad faith by, *e.g.*, intentionally subverting Plaintiff's security measures

13   and failing to correct its activities despite receiving cease and desist letters, such allegations are

14   sufficient to state a claim under the ACPA.  *See id.* (finding bad faith intent to profit where "Plaintiff

15   has provided evidence that Quimby refused to transfer the domain names to Plaintiff even though

16   Quimby claims the domain names are not in use," "[t]here is no evidence that Defendants had any

17   intellectual property rights in the 'RingCentral' mark prior to registering the domain names, and the

18   domain names do not consist in any way of the legal name of either Defendant"); *Agri-Supply Co.,*

19   *Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. 2006) (finding bad faith in default

20   judgment case when plaintiff alleged that defendant had "registered confusingly similar domain

21   names in bad faith and with no noncommercial or fair purpose for doing so").

22   　　　5.　　California Common Law Trademark Infringement

23   　　　Plaintiff next alleges a claim for common law trademark infringement.  "To prevail on this

24   claim, a plaintiff must show (1) prior use of the mark and (2) the defendant's use of a mark that is

25   likely to cause confusion."  *Naturemarket*, 694 F. Supp. 2d at 1058 (citing *American Petrofina v.*

26   *Petrofina of California, Inc.*, 596 F.2d 896, 897 (9th Cir. 1979).  Here, Plaintiff has alleged that it

27   has used its mark since 1995, and that Defendant's site is likely to cause confusion because it

28   appropriates that mark in a business directly related to Plaintiff's and has already caused consumers

United States District Court

For the Northern District of California

1  to complain that Plaintiff is conspiring with auto-posters like Defendant.  Compl. ¶¶ 72-73, 93-100,

2  106 152-55.  This is sufficient to state a claim.  *See id.* at 1059 (citing *Truong Giang Corp. v.*

3  *Twinstar Tea Corp.*, No. C 06-3594 JSW, 2007 WL 1545173, at *4 (N.D. Cal. May 29, 2007)

4  (noting that California trademark infringement standard is substantially similar to federal trademark

5  infringement claim); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 948 (N.D. Cal. 2005) ("Plaintiff claims

6  that she has used the 'Water Girl' trademark, which is allegedly registered to her, since 1996.

7  Moreover, Plaintiff alleges that Defendants' use of the 'Water Girl' mark has caused confusion.

8  These allegations are sufficient for a statement of a claim on which relief may be granted.").

9       6.    Breach of Contract, Inducing Breach of Contract, and Intentional Interference with

10            Contractual Relations

11  "To succeed on a claim for breach of contract under California law, a plaintiff must plead and

12  prove:  (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3)

13  defendant's breach; and (4) damage to plaintiff resulting therefrom."  *Naturemarket*, 694 F. Supp. 2d

14  at 1059 (citing *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)).  Here,

15  Plaintiff alleges a valid contract between Defendant and craigslist – the TOU to which Defendant

16  assents each time he accesses the website.  Compl. ¶¶ 29-30.  Although Plaintiff has performed

17  under the contract by providing access to its site, Plaintiff alleges Defendant has breached and

18  induced breach of sections of the TOU that prohibit unauthorized access to computers and disruptive

19  activity, and posting ads on behalf of others, among others.  Mot. at 13; Compl. ¶¶ 31-32, 79-85,

20  156-169.  Plaintiff has further alleged harm as a result of the breach, in the form of, *e.g.*, its

21  investigative, technical, and customer service costs in attempting to remove content improperly

22  posted.  *Id.* ¶¶ 101-106.  These allegations are sufficient to state a claim.  *Naturemarket*, 694 F.

23  Supp. 2d at 1059 (so finding with similar allegations).

24  Furthermore, because Defendant's business is centered around circumventing Plaintiff's TOU

25  and security measures by offering auto-posting services to its customers, Plaintiff has also alleged a

26  claim for inducing breach of contract and intentional interference with contractual relations.  Compl.

27  ¶¶ 91-92.  *See Naturemarket*, 694 F. Supp. 2d at 1059-60 (so finding based on additional allegations

28  that Defendant knew of the contract and acted to intentionally to induce others to breach the TOU)

1  (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55 (1998); *Metal Lite, Inc. v. Brady*

2  *Constr. Innovations, Inc.*, 558 F. Supp. 2d 1084, 1094 (C.D. Cal. 2007)).

3         7.   <u>Fraud</u>

4         Finally, Plaintiff raises a fraud claim. "Under California law, the indispensable elements of a

5  fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable

6  reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)

7  (quotation and citation omitted). Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff

8  to allege a fraud claim with particularity. Fed. R. Civ. P. 9(b).

9         Here, the same conduct described above makes out a valid, particularized fraud claim.

10  Plaintiff has alleged that Defendant assented to craigslist's TOU each time he accessed the site, with

11  the intent to breach its terms, and that Defendant's business centered around mis-using craigslist's

12  programs and services. Compl. ¶¶ 86-90, 189-91. In addition, Plaintiff alleges that Defendant

13  induced craigslist to reasonably rely on his promise to comply with the TOU and that Plaintiff

14  granted Defendant access to the site. Compl. ¶¶ 192, 194, 196. Finally, Plaintiff alleges harm as a

15  result of Defendant's conduct and its reliance. Compl. ¶¶ 196-97. These allegations are sufficient to

16  satisfy Rule 9(b). *See Naturemarket*, 694 F. Supp. 2d at 1060 (so finding based on similar

17  allegations).

18  D.   <u>Relief</u>

19         Because default judgment is warranted, the next question is the form or forms of relief to

20  which Plaintiff may be entitled. In this case, Plaintiff seeks both injunctive relief and damages.

21         1.   <u>Injunctive Relief</u>

22         Plaintiff claims that it is entitled to injunctive relief to restrain Defendant's trademark

23  infringement under 15 U.S.C. § 1114, 1125(a), 1125(c) and 1125(d); and violations of the DMCA

24  under 17 U.S.C. § 1201. These statutes authorize injunctive relief. *See* 15 U.S.C. § 1116(a)

25  (authorizing injunctions to prevent trademark violations); 17 U.S.C. § 1203(b)(1) (authorizing courts

26  to issue permanent injunctions for violations of the DMCA "on such terms as [they] deem[ ]

27  reasonable to prevent or restrain a violation"). Plaintiff also seeks injunctive relief based on its

28  breach of contract claim. "[I]t is appropriate to grant an injunction on an application for default

judgment." *craigslist v. RealWorks*, No. 08-5072 JW, Docket No. 44, at 8-9 (N.D. Cal. Oct. 29, 2009) (citing *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 393-94 (C.D. Cal. 2005)).

To obtain permanent injunctive relief, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Geertson Seed Farms v. Johanns*, 570 F.3d 1130, 1136 (9th Cir. 2009). "[T]he alleged availability of money damages is not a reason to deny injunctive relief . . . ." *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824, 827 (9th Cir. 1997).

In the instant case, based on the allegations described above, the Court finds that injunctive relief is appropriate to restrain Defendant from continuing his unlawful conduct. Plaintiff has demonstrated irreparable harm based on its allegations that Defendant's conduct impairs the quality of Plaintiff's services and harms its reputation and goodwill. *See, e.g.*, Compl. ¶ 6. Such reputational harm is not fully calculable, rendering legal remedies inadequate. *See* Mot. at 17 (citing Compl. ¶¶ 105, 117, 126, 138, 169, 177, 185, 197, 202 (so alleging)). Nor would an award of damages prevent future harm to Plaintiff, which Plaintiff has demonstrated is likely to occur based Defendant's failure to respond to either cease and desist letters, Compl. ¶ 89, or this litigation. Indeed, Plaintiff's counsel avers that Defendant's website was still operable as of the filing of its complaint, thus demonstrating a likelihood of future harm absent injunctive relief. Accordingly, the Court finds Plaintiff has demonstrated it is entitled to injunctive relief. *See Naturemarket*, 694 F. Supp. 2d at 1061-62 (so finding based on similar allegations); *RealWorks*, Docket No. 44, at 8-9 ("Here, Plaintiff has alleged that unless restrained, Defendant will continue to cause irreparable injury for which monetary compensation is not a complete remedy. Defendant has defaulted and it appears that the failure to grant the requested injunction would result in Plaintiff's continued exposure to harm. Thus, the Court finds that injunctive relief is appropriate.") (internal citations omitted).

United States District Court

For the Northern District of California

1    Because injunctive relief is warranted, the Court's task is to set forth a narrowly tailored

2    injunction that "affect[s] only those persons over which it has power, and [] remed[ies] only the

3    specific harms shown by the plaintiffs, rather than [] enjoin[ing] all possible breaches of the law."

4    *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (so stating in the context of a

5    preliminary injunction) (internal citations and quotation marks omitted). The Court's order below is

6    narrowly tailored to protect Plaintiff from future unlawful activity by Defendant.

7        2.    Damages

8    In addition to injunctive relief, Plaintiff requests damages. Plaintiff has the burden of "proving

9    up" its damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-

10   02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving

11   damages through testimony or written affidavit."). craigslist requests only two forms of statutory

12   damages; it has not requested attorney's fees or costs.

13       a.    DMCA

14   First, Plaintiff seeks statutory damages under the DMCA, 17 U.S.C. § 1203(c)(3). Section

15   1203 permits a plaintiff to obtain statutory damages in lieu of actual damages. § 1203(c)(3)(A). The

16   DMCA allows for statutory damages of $200 to $2,500 "per act of circumvention, device, product,

17   component, offer, or performance of service, as the court considers just." *Id.* The Court thus has

18   broad discretion to set the level of damages within that range. *Naturemarket, Inc.*, 694 F. Supp. 2d

19   at 1063 (citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir.1990));

20   *craigslist v. RealWorks*, No. 08-5072 JW, Docket No. 44, at 6 (N.D. Cal. Oct. 29, 2009) ("A court

21   has wide discretion in determining the amount of statutory damages to be awarded and should

22   consider what is reasonable in the particular case in light of the nature of the copyright and the

23   circumstances of the infringement.") (citing *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,

24   149 F.3d 987, 996 (9th Cir. 1998)).

25   In this case, Plaintiff offers alternative measures of statutory damages. At the higher end,

26   Plaintiff offers a calculation of statutory damages based on the discovery it obtained from PayPal

27   and Plimus, two payment processors for Defendant's craigslist-poster.com site. PayPal's and

28   Plimus's transaction logs show that Defendant sold upwards of 85,810 credits through these two

**United States District Court**
For the Northern District of California

1  processors, which customers used to purchase Kerbel's craigslist-related services.  *See* Tran Decl. ¶¶

2  5, 8, Exs. B-E.  As craigslist explains, these credits add up to a minimum of 8,581 circumventing

3  "devices" as defined in § 1203.[4]  Applying § 1203's lowest statutory damages rate of $200, this

4  calculation method yields statutory damages of $1,716,200.

5      Alternatively, Plaintiff offers a more conservative estimate of damages based on Plaintiff's

6  advertising "offers" on his website for bundled packages of 10,000 credits.  *See* 17 U.S.C. §

7  1203(c)(A) (permitting statutory damages of $200–$2,500 "per act of circumvention, device,

8  product, component, *offer*, or performance of service, as the court considers just.") (emphasis

9  added).  Under this calculation method, Plaintiff refers to Defendant's website advertisements,

10  through which he offered to sell bundles of credits (ranging from 5 to 10,000) at a discount to

11  customers, who could then use these credits to purchase an array of DMCA-violating services or

12  products from Defendant as described above.  Conservatively assuming Defendant only offered to

13  sell the largest bundle of 10,000 credits, and that all credits would be used to purchase phone-

14  verified accounts (which cost 10 credits each), Defendant made at least 1,000 offers to sell phone-

15  verified accounts through his website.  Mot. at 20; Tran Decl. ¶ 3, Ex. A, at 3.  Using this base rate

16  multiplied by the statutory minimum $200 generates $200,000 in damages.

17      The Court adopts Plaintiff's most conservative estimate of damages based on Defendant's

18  advertising for 10,000-credit bundles.  The Court finds that this lower alternative statutory damages

19  amount of $200,000 is reasonable in view of the fact that, according to Plaintiff's evidence, Plaintiff

20  can only prove Defendant made just over $33,000 in sales.  Tran Decl. ¶ 9.  In addition, Plaintiff's

21  allegations of actual damages are weak, as it only alleges it has suffered harm in excess of $5,000

22  per year.  Compl. ¶ 103.  Courts have opted for alternative, conservative estimates of statutory

23  damages under the DMCA when the potential windfall for the plaintiff is out of keeping with the

24  profits recovered or damages alleged.  For instance, in *Craigslist, Inc. v. Doe 1*, C09-4739 SI BZ,

25  2011 WL 1897423, at *5-6 (N.D. Cal. Apr. 25, 2011) *report and recommendation adopted sub nom.*

---

27      [4]  Kerbel's site offered certain services for 1 credit, some for 5 credits, and some for 10

28  credits.  craigslist makes the assumption that customers applied all of their credits to purchase 10-
credit services from Kerbel, which results in the lowest, most conservative number of circumventing
services or "devices."

United States District Court

For the Northern District of California

*Craigslist, Inc. v. Meyer*, C 09-4739 SI, 2011 WL 1884555 (N.D. Cal. May 18, 2011), the court analyzed "whether craigslist's actual damages bear a 'plausible relationship' to the statutory damages requested, and [whether] the damages award deters Meyer as well as other defendants from violating the DMCA rather than just resulting in a windfall for craigslist," and concluded that an award based on the number of bundle plans sold rather than total devices sold was reasonable. (Citations omitted.)  The Court finds this reasoning persuasive, and concludes that a $200,000 award is sufficient deterrence for individual actors such as Kerbel.

        3.    <u>Trademark Infringement Profits</u>

        Finally, Plaintiff seeks to recover Defendant's profits from his trademark infringement.  *See* 15 U.S.C. § 1117(a).  Section 1117(a) provides that successful plaintiffs may recover, *inter alia*, damages in the amount of the defendant's profits.  Here, based on its third-party discovery from PayPal and Plimus, craigslist has determined that Defendant received at least $33,196.70 in sales for his craigslist-related products and services.  Tran Decl. ¶¶ 4-9, Exs. B-E.  Pursuant to § 1117(a), sales are equivalent to profits absent evidence from the defendant as to costs or other deductions from said profits.  *See* § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").  Accordingly, the Court finds that craigslist is entitled to $33,196.70 in damages for its trademark infringement.  *See Doe 1*, C09-4739 SI BZ, 2011 WL 1897423, at *6 (so finding based on evidence of revenues).

# IV.   **CONCLUSION**

        For the foregoing reasons, the Court hereby orders as follows:

(1)   Plaintiff's motion for default judgment is **GRANTED**.

(2)   Plaintiff's request for injunctive relief is **GRANTED**.  Defendant Alecksey Kerbel and his agents, servants, employees, attorneys, affiliates, distributors, successors and assigns, and any other persons acting in concert or in participation with him are now and forever enjoined from:

        (a)   Manufacturing, developing, creating, adapting, modifying, exchanging, offering, distributing, selling, providing, importing, trafficking in, or using any automated device or computer program (including, but not limited to, any technology, product, service, device, component, or part

United States District Court

For the Northern District of California

thereof) that enables and is used to make postings on craigslist without each posting being entered manually;

(b)     Manufacturing, developing, creating, adapting, modifying, exchanging, offering, distributing, selling, providing, importing, making available, trafficking in, or using content that uses automated means (including, but not limited to, spiders, robots, crawlers, data mining tools, and data scraping tools) to download or otherwise obtain data from craigslist;

(c)     Copying, distributing, displaying, creating derivative works or otherwise using protected elements of craigslist's copyrighted website (located at www.craigslist.org), including, but not limited to, the website's post to classifieds, account registration and account log in expressions and compilations, and from inducing, encouraging, causing or materially contributing to any other person or entity doing the same;

(d)     Circumventing technological measures that control access to craigslist's copyrighted website and/or portions thereof (including, but not limited to, CAPTCHAs and RECAPTCHAs), and from inducing, encouraging, causing or materially contributing to any other person or entity doing the same;

(e)     Manufacturing, developing, creating, adapting, modifying, exchanging, offering, selling, distributing, providing, creating, importing, trafficking in, or using technology, products, services, devices, components, or parts thereof, that are primarily designed or produced for the purpose of circumventing technological measures and/or protection afforded by technological measures that control access to craigslist's copyrighted website and/or portions thereof, and from inducing, encouraging, causing or materially contributing to any other person or entity doing the same;

(f)     Accessing or attempting to access craigslist's computers, computer systems, computer network, computer programs, and data, without authorization or in excess of authorized access, including, but not limited to, creating accounts or posting content on the craigslist website, and from inducing, encouraging, causing, materially contributing to, aiding or abetting any other person or entity to do the same;

(g)     Manufacturing, developing, creating, adapting, modifying, exchanging, offering, selling, distributing, providing, importing, trafficking in, purchasing, acquiring, transferring, marketing or using any program, device, or service designed to provide an automated means of accessing craigslist's website, automated means of creating craigslist accounts, or automated means of posting ads or other content on craigslist's website, including, but not limited to, any program, device, or service that is, in whole or in part, designed to circumvent security measures on the craigslist website;

(h)     Repeatedly posting the same or similar content on craigslist, posting the same item or service in more than one category on craigslist, posting the same item or service in more than one geographic area on

craigslist, and from inducing, encouraging, causing, assisting, aiding, abetting or contributing to any other person or entity doing the same;

(i)     Posting ads on behalf of others, causing ads to be posted on behalf of others, and accessing craigslist to facilitate posting ads on behalf of others;

(j)     Using, offering, selling or otherwise providing a third-party agent, service, or intermediary to post content to craigslist;

(k)     Misusing or abusing craigslist, the craigslist website and craigslist services in any way, including, but not limited to, violating the craigslist TOU; and

(l)     Using the CRAIGSLIST mark and any confusingly similar designations in Internet advertisements and otherwise in commerce in any manner likely to confuse consumers as to their association, affiliation, endorsement or sponsorship with or by craigslist.

(3)     The Court awards to Plaintiff statutory damages under the DMCA in the amount of $200,000.

(4)     The Court awards to Plaintiff $33,196.70 in damages for trademark infringement.

(5)     The Clerk is directed to enter judgment and close the file.

This Order disposes of Docket No. 24.


IT IS SO ORDERED.


Dated:  August 2, 2012

_____
EDWARD M. CHEN
United States District Judge